## THOMAS M. PRENTISS *vs.* CITY OF BOSTON.

A city dug a trench in a highway across and under the track of a horse railroad for the purpose of laying a sewer. The trench was fenced in by planks, the planks across the railroad being removable for the passage of the cars. The plaintiff, in a dark night, stepped upon the track to take a car. The car, as he was about to reach it, started and moved slowly. He followed it and fell into the trench. *Held*, that there was evidence sufficient to authorize the jury in finding that the plaintiff was in the exercise of due care ; that the city was bound to guard the excavation so as to make it reasonably safe, and that the act of the railroad company in removing the barriers from across the track did not relieve the city, if it was otherwise liable to an action for the defect in the highway.

TORT under the Gen. Sts. *c.* 44, § 22, to recover for an injury received by the plaintiff through a defect in Dudley Street, a highway in the city of Boston.

Trial before *Morton*, J., who, after a verdict for the plaintiff, reported the case, upon the agreement that if the whole evidence was insufficient to sustain the verdict, judgment was to be for the defendant. If the ruling requested by the defendant should have been given, or if the charge given was not sufficiently favorable to the defendant, a new trial was to be granted. Otherwise, judgment was to be entered on the verdict. The laying out of the way was admitted. It was admitted by both parties that one or two days prior to the accident, a drain had been in process of construction in Kenilworth Street, near its junction with Dudley

Street, which terminated in a "man-hole" which had been opened in Dudley Street. The track of the Metropolitan Horse Railroad in Dudley Street ran across this hole, and included the greater portion of it between its rails. Its cars passed over this track from Roxbury to Boston, but not in the other direction.

William H. Crimp was called by the plaintiff and testified : "At the time of the accident I was in the employ of the Metropolitan Horse Railroad Company. I was put there to guard the hole and run the cars over it. I had been there for that purpose two nights and three days. It was nine feet deep and six in diameter. On the Kenilworth Street side of the track there were piles of earth four or five, feet high on each side of the hole, and a plank stretched between them running along on the edge of the hole the same way as the track. On the side of the track opposite the Kenilworth Street side there were barrels, one on the Boston side and one on the Roxbury side of the hole, and a plank laid on the barrels, running parallel with the track, opposite to the plank on the other side. The planks ran the length of the hole on each side, and the cars passed between them. They were far enough apart to let them do so. No plank was put across the track at any time while I was there. There were lights placed on each pile of dirt, and on each barrel, four in all, which were lower than the top of the cars. The driver would unhitch his horses and take them round the hole, and I would take the car through. There was a slight decline there, and the car would go along of itself, and I would brake it up when it got over the hole. I had taken a car over this way and stopped with it two or three minutes, and after coming back heard a voice say, ' Save me ; ' and found the plaintiff in the hole, and helped him out. The cars, after nine o'clock P. M., passed about every fifteen minutes, and every five minutes before that time."

The plaintiff testified : " I had been passing the evening at my uncle's on Kenilworth Street, which I reached by another route. I left soon after nine o'clock, came down Kenilworth Street to take a car, and saw the dirt piled up on the side, as I came along, as high as my shoulder. As I came down I saw the car coming along from Roxbury. As I reached the corner it stopped. I

stepped from the sidewalk on to the track behind the car, and it started. I was then within two or three feet of the car. It started very slowly, and I followed close behind it, between the rails. I was following slowly close to the car when it stopped again; and just as I put my hand on the handle of the rail it started again and I fell into the hole. There was no conductor at the rear of the car. I saw the shoulders of a man on the front platform. The car had gone several steps from where it first started before I fell. It was quite dark."

The defendants then called S. C. Smith, John S. More and Patrick Mitchell, who testified substantially that Smith had contracted with the city to build the sewer, and had employed More as his foreman and Mitchell as one of his servants; that they had at about sunset of the day of the accident placed a plank between the two piles of earth on the Kenilworth Street side of the track, also a plank between two barrels on the opposite side, these planks going the length of the hole, and running longitudinally on each side of the track, and sufficiently far apart (ten feet or more) to enable the cars to pass through; that they had also placed on the Roxbury side of the hole a plank stretching completely across the track, one end resting on the pile of dirt on the Kenilworth Street side of the track, and the other end on the barrel on the opposite side, and that they had stretched a similar plank on the Boston side of the hole, so that the hole was completely closed by planks on every side; that the planks across the track were not fastened, but were left movable, with the expectation and for the purpose that they should be removed from time to time to let the cars pass through; that the hole was not covered up; that four keroseno lights were placed there, substantially as described by Crimp; that this was the condition of things when Smith and More left; that Mitchell stayed a short time afterward, and saw Crimp take down and put up the planks twice to let cars through; that after that, the next time a car came through, he did not put up the planks; that Mitchell told him he ought to do so, but he said that he was there to look after the hole, and that was his business, and that Crimp did not put up the planks before he Mitchell, left, which was at a quarter before seven.

John W. Chase, captain of police of the district, testified that he passed the place between seven and half past seven o'clock, that he saw Crimp with the plank in his hands, on the Roxbury side of the hole, and saw him replace it across the track, and that it was up between the barrel and pile of dirt and resting on them when he left.

Hawley Folsom, sergeant of police of that district, testified that he examined the place between half past seven and quarter before eight that evening; that the plank on the Roxbury side of the hole was then up between the piles of dirt and the barrel and across the track, and that Crimp was leaning or sitting on it, and that it was so when he left.

The defendants then requested the court to rule that there was no evidence which would justify the jury in finding a verdict for the plaintiff. For the purposes of the trial, the court declined so to rule.

The defendants then requested the court to instruct the jury as follows: If the jury are satisfied that barriers and lights were placed around the hole into which the plaintiff fell, so that they would have sufficiently protected a person travelling on the street, and using due care, from danger, the city is not liable, if those barriers, or any of them, were afterward removed, and not replaced, by the servants or employés of the railroad corporation, for the purpose of passing their cars on their tracks over the hole. But the court declined to give the instruction.

The defendants claimed that the plaintiff's remedy, if he had any, was against the Metropolitan Horse Railroad Company, and not against the city.

The court then instructed the jury substantially as follows: That in this case the city had a right to construct the sewer and make the excavation, but that it was bound to erect suitable barriers and safeguards; that it was not the hole, but the absence of safeguards, which constituted the defect, if any; that it was purely a question of fact whether such barriers or safeguards had been erected in this case; that no rule of law could be laid down, except this general one, that the city must either by lights, bars or boards, or in some other way, provide a reasonable safeguard

that in ordinary cases the city would not be liable if these barriers or safeguards were removed by others; but that in this case it was competent for the jury to consider the fact that it was known that horse-cars would pass; that it was for the jury to say whether, taking this fact into consideration, the barriers were sufficient; or whether other precautions, such as stationing offi cers or servants there, or planking over the hole, should have been adopted; that if, considering the circumstances, the city should have stationed an officer there or taken other precautions to render the street reasonably safe, the city was liable; that in the opinion of the court, the question whether the barrier was thrown across the track at times when the cars were not passing, was not of much consequence, as it was removable and intended to be removed to let the cars pass through; that the jury should inquire whether it was necessary that there should be something, when the cross-barrier was down, to warn travellers; that it was not of consequence to inquire in this case whether there was a liability on the part of the Metropolitan Railroad Company; that if the city trusted to agents of the Metropolitan Railroad Company to properly guard the hole, it is responsible if these agents were negligent, and must take the consequences of and are liable for such negligence.

*J. P. Healy & J. L. Stackpole,* for the defendants.

*E. D. Sohier & J. F. Colby,* for the plaintiff.

CHAPMAN, C. J. After the evidence was in, the defendants requested the court to rule that there was no evidence which would justify the jury in finding a verdict for the plaintiff. He declined to do this, and the defendants excepted. It was necessary for the plaintiff to prove, not only that he used ordinary care, but that the defendants were negligent. As to his own care, it was not necessary to prove it by directly affirmative evidence, but the inference of such care might be drawn from the absence of all appearance of fault, either positive or negative, on his part, in the circumstances under which the injury was received. *Mayo* v. *Boston & Maine Railroad,* 104 Mass. 137.

He gave in his testimony a clear narrative of his progress from the sidewalk to the street and the track behind the car, and de-

scribed its starting slowly and then stopping, and his following it till it stopped again, and putting his hand upon the handle of the rail, when it started again and he fell into the hole.   Others described the locality, including the purpose for which the hole was dug, the embankments of earth, the guards and lights placed there to protect passengers ; and as it was after nine in the evening, and a dark night, it was a matter of inference how far passengers could see the danger to which they were exposed.   There was evidence sufficient to authorize the jury to find that the plaintiff used due care, and a majority of the court think it was properly submitted to them.

The city had a right to make the excavation ; but when they left the place at night, they were bound to erect barriers to make it reasonably safe and convenient for travellers.   If they were removed by strangers, at night, without the knowledge of the city authorities, the city would not be liable.   *Doherty* v. *Waltham*, 4 Gray, 596.   But they were not thus removed.   The city authorities had knowledge that the cars were running by their permission, and they knew that this would make it necessary to remove the barriers as often as a car passed.   Their authority over the streets was not abridged by the existence of the railway ; and if they were made liable to travellers by reason of any negligence of the railway, they had a remedy over.   Sts. 1864, *c.* 229 ; 1866, *c.* 286 ; 1871, *c.* 381.   They were liable, therefore, for the negligence of the railroad company.   *Currier* v. *Lowell*, 16 Pick. 170.   The existence of the railroad, or its negligence, did not relieve the city from its liability for defects in the highway.   Nor was the remark of the justice, "that whether the barrier was thrown across the track when the cars were not passing was not of much consequence, as it was removable and intended to be removed," prejudicial to any rights of the defendants, for it was obviously correct.   Under proper instructions, the jury have found that the defendants were guilty of negligence, and the plaintiff used due care.        *Judgment for the plaintiff on the verdict.*