## CORNELIUS S. WHITE *vs.* CITY OF BOSTON.

Suffolk. March 14. — May 4, 1877. ENDICOTT & SOULE, JJ., absent.

In an action against a city, to recover for injuries occasioned by a defect in a high-
way, it appeared that the plaintiff entered upon the way on the sidewalk in the
night-time; that he saw at a short distance from his point of entrance a wooden
horse with a lantern attached standing across the road-bed of the way, and noticed
that the way was being repaved; that there was no barrier across the sidewalk;
and that he walked along the sidewalk to a point where a railroad crossed the
way at right angles at grade, and stepped from the end of the sidewalk abutting on
the railroad into a trench causing the injuries. The plaintiff testified on cross-ex-
amination, that when he entered the street, he understood, from seeing the horse
and light across it, that the street was undergoing repairs and was closed to
travel, but that he supposed the repairs were on the road-bed only. *Held,* that
whether the barrier was a sufficient notice that the sidewalk, as well as the road-
way, was closed was for the jury.

TORT for personal injuries caused by a defect in Warren Ave-
nue, in that part of Boston, formerly Charlestown. Trial in this
court before *Lord,* J., who, after a verdict for the defendant, re-
ported the case for the consideration of the full court in sub-
stance as follows:

The plaintiff testified, that on October 12, 1874, he came to
Boston on business, from Portland, Maine, where he then re-
sided; that, on the evening of the following day, he went in
a street-railway car to Charlestown, and started at about nine
o'clock in the evening to return to Boston, on foot; that he was
familiar with the way, having, prior to February, 1874, lived
several years in Charlestown, but had not passed over Warren
Avenue for eight months before that evening; that he entered
Warren Avenue from City Square, taking the sidewalk on the
easterly side of the avenue, and, as he did so, he saw a wooden
horse with a lantern attached to it, standing across the road-bed
of the street within a rod or two of the entrance from the square,
and at the same time noticed that the street was being repaved;
that there was no guard or barrier of any kind across the side-
walk, and he supposed the guard across the road-bed was in-
tended solely to prevent the passage of vehicles; that he walked
along, at his ordinary gait, looking ahead of him, seeing no ob-
struction or anything that suggested to him any danger in pro-
ceeding, and perceiving nothing unusual or peculiar in the con-

dition of the sidewalk; that when he arrived at the crossing of the Fitchburg Railroad, which crosses Warren Avenue at right angles on a level grade, he stepped, from the end of the sidewalk abutting on the track, into a trench or excavation, and fell headlong, striking upon his face against one of the rails of the track, receiving the injuries complained of.

On cross-examination he testified, that, when he entered the avenue, he understood, from seeing the horse and light across it, that the avenue was undergoing repairs, and was closed to travel, but that he supposed the repairs were on the road-bed only, and that he did not look particularly to see whether the sidewalk was being repaired, and did not see any such repairing, but walked along as he ordinarily would upon any sidewalk, looking ahead; that he knew that, when a horse and light were put across one end of an avenue, it was customary to put another horse and light at the other end, to inclose the place shut off from travel, but that he did not look for any such horse or light, or see the horses and lights, hereinafter mentioned, across Front Street or in the street he was walking upon, on the other side of the railroad track; that there was no bend in the road, or anything to obstruct his view, so far as he knew, of the latter lights; and that when he stepped off the sidewalk, he did not look to see whether there were any lights ahead.

The following facts also appeared from evidence introduced by the plaintiff: The excavation was about twenty inches deep, extending in a continuous line with the easterly sidewalk, under and between the rails of the track, from the end of the sidewalk abutting on one side of the track to the end of the sidewalk abutting on the opposite side of the track. The excavation was made a day or two before the accident happened, in the course of the repairs of the street, but by whom made, or for what purpose, did not distinctly appear. The street lamps were all lighted, and there was one at a distance of fifty feet from the place of the accident. The nearest guard of any kind was a wooden horse with a lantern attached standing about forty feet distant, on the opposite side of the avenue, across Front Street, a street entering Warren Avenue on the westerly side, by the side of and parallel with the railroad track. There was also a guard, with a lantern attached, standing across the road-bed of

the avenue on the south or Boston side of the railroad crossing, but no guard across either sidewalk on that side. Between City Square and the railroad crossing, about thirty feet from the latter, Warren Avenue is entered on the easterly side by Water Street, but it did not appear in evidence whether or not there was any guard across Water Street. The distance from City Square to the railroad crossing is one hundred and eighty-six feet, and within those limits, on the easterly side of the avenue, were nine stores and four tenements for residence.

The plaintiff also called one McLaughlin, who testified that he was the contractor employed by the city to perform the repairs, and that he was performing them under authority of the city; that the street was well blocked and lighted; that repairs had been made by him upon both the roadway and sidewalk, the roadway being repaved and the sidewalk rebricked and edgestone relaid; that the repairs on the sidewalk were kept somewhat behind those on the roadway; and that the repairs on the roadway were then going on upon the Charlestown side of, and near to, the railroad crossing, and between the tracks; that he recollected that three or four courses of brick had been removed on the Charlestown side of the sidewalk, next to the end stone where the plaintiff stepped off, and that the end stone itself was canted, but otherwise the surface of the sidewalk was smooth and unobstructed, the edgestones were all in place excepting the end stone, and the sidewalk was substantially completed.

Other witnesses for the plaintiff testified that within an hour and a half after the accident happened they went and made an examination of the alleged locality of it; that they walked along the easterly sidewalk of the avenue, from City Square to the railroad crossing; that the wooden horse, with a lantern attached, stood across the road-bed, as described by the plaintiff, but there was no guard or signal of any kind upon the sidewalk; that the sidewalk was unobstructed and in completed condition up to about six or eight feet from the railroad crossing; that there the bricks had been laid, but not secured in place, and there was a space of about the width of three bricks next to the end stone abutting on the crossing, in which the bricks had not been laid; that the nearest guard or light was a wooden horse with a lantern attached, across the end of Front Street, on

the opposite side of the avenue ; that, being unable to see the excavation distinctly, they detached the lantern from the horse and took it over to the place of the excavation, and by the light of it made their examination, finding the condition at the railroad crossing to be as hereinbefore described.

Upon this evidence, at the request of the defendant, the judge ruled, as matter of law, that the evidence would not warrant the jury in finding a verdict for the plaintiff.

If this ruling was correct, judgment was to be entered on the verdict ; otherwise, a new trial was to be ordered.

*G. H. Kingsbury*, for the plaintiff.

*H. W. Putnam*, for the defendant.

LORD, J.   We are all of opinion that too much weight was, at the trial, attached to the testimony of the plaintiff, that, " when he entered the avenue, he understood, from seeing the horse and light across it, that the avenue was undergoing repairs, and was closed to travel, but that he supposed the repairs were on the road-bed only."

It is undoubtedly true that the authorities of a city or town may temporarily close a highway against use, for the purpose of making repairs in the way, and escape liability to any person, who may attempt to use or use the same as a way, with knowledge that it is closed.   Even if unnecessarily closed, if in fact closed, the remedy for such closing is by indictment, and no right of action accrues to an individual because of it.   But, in order to relieve the municipality from liability, to a person sustaining injury by reason of his attempt to use it, it must be closed. What is sufficient to show that it is thus closed is a question of fact.   The statute does not prescribe any particular mode of notifying the traveller that a way is closed.   Nor is there any difference in this respect between different parts of the way ; if the way is closed it is closed to all travel, as well on foot as by carriages or teams.

Whether what was done was sufficient to notify the traveller that the way was closed to travel was a question of fact for the jury, or, at least, a question so mixed of law and fact that it should have been submitted to the jury under proper instructions.   This may depend upon a variety of circumstances : the situation of the way ; the travel it was to accommodate ; the

modes commonly adopted, and the traveller's knowledge of such modes. Such a barrier as existed in this case might have one interpretation in the country and a different one in the town ; it might indicate a closing for some kinds of travel and not for all. It might require a party not to enter at all upon the way, or it might require only that, if he entered, he should do so with more caution than otherwise ; and what degree of additional care it demanded was a question for the jury. The court cannot say, as matter of law, that different modes are not adopted in different places ; and that some barriers indicate only that a particular kind of travel is deemed dangerous, and not all kinds of travel ; nor that a portion of the way is not fit to be used, while other parts of the same way are to be deemed open to travel as safe and convenient. It sometimes happens that the mind incautiously and unconsciously passes upon the weight of evidence, instead of determining whether in reality it is a question. of conflicting testimony ; for in case of conflicting evidence, even though the preponderance should be so great that a judge would set aside a verdict if against such preponderance, it is the duty of the court to submit the whole evidence to the jury, for its judgment both upon the credibility and the effect of the testimony. *New trial ordered.*