FRANK C. FOWLER *vs.* INHABITANTS OF GARDNER.

Worcester.    October 7, 1897. — November 23, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Personal Injuries — Defective Highway — Street Railway — Evidence — Exceptions.*

In an action against a town for personal injuries occasioned to the plaintiff by an alleged defect in a highway, consisting of a guard rail at a curve in the tracks of a street railway, it is competent for the defendant to show that such a guard rail was necessary to the operation of the railway at the place of the accident; and the defendant is also entitled to a ruling that, if the railway "is constructed in a proper manner, and if in fact the portions of its constructions which may be complained of as defects are necessary to its operation as a street railway, though it or they may be obstacles to travel, or present dangers to those using vehicles, they would not on that account be defects in the way."

The bill of exceptions in this case, which was an action against a town for personal injuries, is to be interpreted as showing that the defendant's offers of proof and requests for rulings related to the condition of the street railway at the time of the accident, and not to its original construction.

TORT, for personal injuries, occasioned to the plaintiff by an alleged defect in a highway in the defendant town. Trial in the Superior Court, without a jury, before *Hardy*, J., who allowed a bill of exceptions, in substance as follows.

The defect complained of was the existence in the highway,

at a curve in the street railway passing from the tracks from one street into another, of a guard rail on the inside of the track, with which the sleigh in which the plaintiff was riding came in contact, and it was overthrown. The evidence, all of which was by estimate from observation, tended to show that the guard rail stood from one to two inches above the level of the stone paving next the rail, and from one half an inch to an inch above the track which it served as a guard rail; that this guard rail extended in a curved line from the side to the middle of the street, and the end of the guard rail in the middle of the street was left projecting there in a right-angular corner; and that at this point a car moving north would make this turn to the left, or the west, on a radius of forty-eight feet, and the track to the inside of which this guard rail was laid would be the west track. No question was raised as to the railway corporation being legally chartered and having a legal location at the place in question, and a right to maintain the tracks there, although the plaintiff refused to admit that the tracks were exactly in accordance with the terms of the franchise or specifications for their location.

The defendant offered the location given by the selectmen of the town to the railway corporation, which was admitted to prove that a location was given. The defendant then asked the general manager, who had constructed the road and managed it after its construction, whether or not the road was built in accordance with the location which was shown him.

The plaintiff objected to the evidence, as involving a construction of the franchise and also of law. The judge excluded the question, and ruled that it was incompetent and irrelevant, in view of the admission made by the plaintiff that there was a legal location for the railway.

The superintendent of the railway corporation, who was called as a witness by the defendant, was asked, " At the time of the accident, what do you say about the guard rail at that point, as to being in or out of order?" The plaintiff objected to this question.

The defendant then asked, " I want to ask about the firmness of the structure, what its condition was?" The judge said, " I shall allow the witness to testify as to what the condition of the track was, if he can so testify without giving an opinion." The

defendant then asked, "I am asking you in what condition it was?" The witness answered, "Good condition."

His examination was continued as follows: "*Q.* In what respect? *A.* Perfect; the guard rail conformed to the main rail of the track. — *Q.* What was its condition as to firmness? *A.* It was firm."

Upon the question of the construction of the track, the judge stated to the defendant's counsel that he would put no restrictions upon the defendant as to the proof of the actual condition of the track at the place of accident.

The defendant called as a witness one Ordway, who testified that he was roadmaster of the Fitchburg and Leominster Street Railway Company, and had been engaged in that business about six years; and that he put in a switch and frog, and changed the curve a little in the railway at the point where the accident happened to the plaintiff, and also put in this guard rail in the fall of 1894.

He was then asked the following question: "Whether, in your experience and observation and judgment as a street railroad man and as roadmaster, the construction of that switch and turnout at that point was a proper method of construction in that place on that curve?"

The plaintiff objected, on the ground that the witness had not been qualified as an expert on construction of tracks, and on the further ground that whether the rail complained of as a defect was proper construction for a railroad was immaterial. The judge excluded the question, but stated that it might be proper for the defendant to offer evidence that the rail was left in good condition.

The defendant's counsel then said, "I am going to show, in a moment, he left it in a condition which I claim a right to show is proper construction. The next question I propose to ask is, whether a guard rail is necessary on a curve with that radius, whether a guard rail is necessary to the operation of the road. I claim the right to prove proper construction, and a proper condition."

The judge stated, "If you ask the question with reference to that particular place, I do not know but I ought to allow it to be answered, but if you ask it in the sense of what is the method

usually adopted by railway companies, I do not think I ought to allow it, not in that sense." The defendant's counsel then stated, " I will limit my question, as your honor suggests, by adding, 'in that place on that curve,' "

The plaintiff's counsel then said, " I presume what they seek to show is, was this in a proper condition. I object to its being shown in this way."

The judge remarked, " I think, as I understand the question now, I shall have to exclude it " ; and the defendant excepted.

The defendant's counsel then asked the witness, " Whether in your opinion, as roadmaster of electric roads, and your familiarity and observation, a guard rail is necessary on a curve of that sharpness? " This question was objected to, and the judge excluded it; and the defendant excepted.

At the conclusion of the evidence, the defendant asked the judge to rule as follows: " If the street railway is duly established by law, with a rightful location and the right to operate as a street railway in the highway, the fact that it is some obstacle to travel does not of itself permit the finding that its existence there constituted a defect in the highway. If it is constructed in a proper manner, and if in fact the portions of its construction which may be complained of as defects are necessary to its operation as a street railway, though it or they may be obstacles to travel, or present dangers to those using vehicles, they would not on that account be defects in the way." The judge declined so to rule ; and the defendant excepted.

The judge found for the plaintiff; and the defendant alleged exceptions.

*W. S. B. Hopkins & J. M. B. Churchill*, for the defendant.

*H. Parker*, for the plaintiff.

ALLEN, J. If by reason of improper construction or negligent maintenance the railroad was in an improper condition at the time and place of the accident, and thus rendered the highway unsafe for travellers, it is well settled that the town is primarily responsible, though it might have a remedy over, by virtue of Pub. Sts. c. 113, § 32. *Hawks* v. *Northampton*, 116 Mass. 420. *Prentiss* v. *Boston*, 112 Mass. 43. *Johnson* v. *Salem Turnpike & Chelsea Bridge Co.* 109 Mass. 522. But if the location of the railroad was duly authorized, and it was built and maintained in

a proper condition, then it was lawfully in the highway, and the town would have no right to remove it, and cannot be held liable for an injury to a traveller occasioned by it. *Davis* v. *Leominster*, 1 Allen, 182. *Jones* v. *Waltham*, 4 Cush. 299. *Young* v. *Yarmouth*, 9 Gray, 386. *Cushing* v. *Boston*, 122 Mass. 173. *Lawrence* v. *New Bedford*, 160 Mass. 227. It was therefore competent for the defendant to show that the condition of the railroad at the time and place of the accident was such as was proper and necessary for its safe operation, and that a guard rail such as was used at that place was necessary.

The plaintiff now contends that evidence to this effect was not excluded; but we think it quite plain that the defendant offered to show that a guard rail was necessary to the operation of the road in that place, on that curve; and that the evidence was excluded.

A similar question is presented by the defendant's request for a ruling, that if the street railway "is constructed in a proper manner, and if in fact the portions of its construction which may be complained of as defects are necessary to its operation as a street railway, though it or they may be obstacles to travel, or present dangers to those using vehicles, they would not on that account be defects in the way." This is in substantial accordance with the doctrine as established by the decisions above cited, and should have been given.

The plaintiff at the argument contended that the defendant's offers of proof and requests for rulings all related to the original construction of the railroad, and not to its condition at the time of the accident. But this appears to us to be too narrow an interpretation of the bill of exceptions. There is nothing to show that the condition of the railroad had deteriorated, or that any point of this kind was made at the trial. Fairly construed, we think the offers of evidence and the requests for instructions related to the condition of the railroad at the time of the accident.

The result is that the entry must be,

*Exceptions sustained.*