IRENE A. HYDE *vs.* CITY OF BOSTON.
SAME *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    November 13, 1903. — May 31, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & BRALEY, JJ.

*Way*, Defect in highway.  *Negligence*, Contributory.  *Street Railway*.  *Boston Elevated Railway Company.*

If the sidewalk and street in front of a building in process of construction are obstructed as far as the tracks of a street railway but the tracks and the other side of the street are open for travel, and if between the rails of the track next to the obstruction there is an unguarded deep trench filled with soft mud as high as the level of the street and looking like the rest of the street when wet and muddy, a woman, who seeking to pass along the street is forced to go around the obstruction and thinking that she is taking the best and nearest way, after looking down and ahead to see where she best can walk, seeing no barrier and hearing no warning, steps into the mudhole and is injured, can be found to be in the exercise of due care both in relation to the city maintain-

ing the highway and to a railway company maintaining the tracks which by statute is bound to keep the surface of the portions of the street occupied by its tracks in repair.

So far as a street is suffered to remain open for travel the duty of the city maintaining it, to take proper precautions to make it safe for travellers, extends to the portions of the street occupied by the tracks of a street railway company which is bound by statute to keep the surface of the portions of the street occupied by its tracks in repair.

A deep trench crossing the tracks of a street railway company, dug for the purpose of laying a drain under a permit from the city maintaining the highway, which has been in existence for four or five days and is left unguarded in a portion of the street open to travel, filled with soft mud and looking on the surface like the rest of the street when wet and muddy, can be found to be a defect in the highway.

The provision of Pub. Sts. c. 113, § 32, requiring street railway companies to keep in repair the surface of the portions of the streets occupied by their tracks, which has been repealed as to street railway companies generally, remains in force as to the Boston Elevated Railway Company until June 10, 1922, when St. 1898, c. 578, § 26, repealing the provision is to apply to that corporation. See § 28.

Whether a street railway company, which by statute is bound to keep the surface of the portions of streets occupied by its tracks in repair, is liable for an injury to a traveller, who in the exercise of ·due care falls between its tracks into a deep trench filled or partly filled with soft mud, depends on the questions of fact whether the trench had been filled to a point where the company became responsible, whether, if it had, the company had been negligent in attending to the duty of repair, and whether such negligence contributed to the injury.

MORTON, J.   These are two actions of' tort, one against the city and the other against the Boston Elevated Railway Company, for personal injuries sustained by the plaintiff in December, 1899, while travelling on that portion ˙of a highway called Roxbury Street in Boston occupied by the railway company's tracks.   The actions were tried and have been argued together. At the close of the evidence the judge of the Superior Court ruled that the plaintiff could not recover in either action, and directed verdicts for the defendants.   The cases are here on exceptions by the plaintiff in each case to this ruling.

It appeared that a deep trench had been excavated in the street for the purpose of laying a drain from a building in the process of erection to the main sewer.   The trench extended under the railway track, and it was admitted that the drain was being laid under a permit from the city to one Shaughnessy. The evidence tended to show that the trench had been there four or five days.   At the time of the accident the sidewalk and the street in front of the building were obstructed so that it was impossible to pass along the sidewalk, or the street between the

sidewalk and the first railway track.  The plaintiff had occasion to go from a point on Gardner Avenue which came into Roxbury Street on the same side as that on which stood the building that was in process of erection to a point on Gardner Street beyond the building and also on the same side.  To get round the obstructions she went out into the street and along the railway track.  While walking along the track she sank into the trench, which was full or nearly full of soft mud, and received the injuries complained of.  There was testimony tending to show that cars were passing through the street and teams also and travellers on the side opposite from the building.  The testimony was contradictory as to the nature and extent of the barriers and notices and what and where they were, and also whether any warning was given to the plaintiff and whether there were any men at work in the trench when the accident occurred.  There was also contradictory evidence as to the appearance and condition of the trench; — the plaintiff and some of her witnesses testifying that it was filled up level with the street and looked like the rest of the street which was wet and muddy from the rain, and the defendant's witnesses contradicting this.

The first question is whether the plaintiff was in the exercise of due care.

We think that it could not be ruled as matter of law that she was not.  The street, as already observed, was not closed to travel.  The street cars were running through it, and teams and travellers were passing on the side opposite to that on which the building was in the process of erection.  The obstructions extended only to the first track, and were not such in character or extent as necessarily to show the plaintiff that in attempting to pass through the street she did so at her own peril.  *Sampson* v. *Boston*, 184 Mass. 46.  *Leonard* v. *Boston*, 183 Mass. 68.  *Butman* v. *Newton*, 179 Mass. 1, 9.  *White* v. *Boston*, 122 Mass. 491.  The circumstances were materially different from those in the cases of *Jones* v. *Collins*, 177 Mass. 444, and *Compton* v. *Revere*, 179 Mass. 413, relied on by the defendant city, and which are, therefore, not applicable.  The plaintiff testified amongst other things that she was prevented from passing along the sidewalk or between the sidewalk and the tracks by reason of the

obstructions, that she took what she thought was the best and nearest way and was looking down and ahead to see where she could walk best, when she stepped into the mudhole, and that she did not see any barrier or hear any warning. The testimony, as already observed, was contradictory as to the nature and extent of the barriers or notices and what and where they were, and also on the question whether any warning was given. It seems to us clear that the question whether she was in the exercise of due care should have been left to the jury. So also we think should the question, which is the next one, whether the defendant city exercised reasonable care and diligence to keep the street safe for travellers. So far as the street was suffered to remain open for travel, it was the duty of the city to take proper precautions to guard against accidents, and to render it safe, and this duty applied to that portion which was occupied by the railway tracks as well as to that portion which was not. *Hawks* v. *Northampton*, 116 Mass. 420. *Lawrence* v. *New Bedford*, 160 Mass. 227. *Fowler* v. *Gardner*, 169 Mass. 505. The rule is different in regard to steam railroads. A city or town is not bound to keep in repair that portion of a street or highway occupied by the tracks of a steam railroad, and is not liable to any one injured by a defect therein. *Rouse* v. *Somerville*, 130 Mass. 361, and cases cited. *Dickie* v. *Boston & Albany Railroad*, 131 Mass. 516. *Scanlan* v. *Boston*, 140 Mass. 84. *Mack* v. *Boston & Albany Railroad*, 164 Mass. 393. The city had notice or at least could be found to have had notice of the existence of the trench, and of the circumstances under which it was being dug and was bound to take reasonable precautions for the safety of travellers. *Prentiss* v. *Boston*, 112 Mass. 43. *Blessington* v. *Boston*, 153 Mass. 409. *Fox* v. *Chelsea*, 171 Mass. 297. Whether it did so and whether the matter complained of constituted a defect and caused the injuries complained of were questions for the jury.

So far as the railway was concerned, it was under no obligation to keep the street in repair generally, or to see that the trench was guarded or lighted, or that reasonable precautions were taken for the safety of travellers. It was only bound to keep in repair " the paving, upper planking, or other surface material " of the portions of the street occupied by its tracks,

if the street was paved, and, if unpaved, as was the case here, an additional space of eighteen inches on each side of its tracks. Pub. Sts. c. 113, § 32. *Leary* v. *Boston Elevated Railway,* 180 Mass. 203.

So far as applicable to street railways generally this provision was repealed by St. 1898, c. 578, § 26. But it was expressly provided that the provisions of that act should not apply to the Boston Elevated Railway Company for twenty-five years from June 10, 1897. The law that was applicable at the time of the accident remains in force therefore so far as the railway company is concerned. Under that law, as already observed, it was bound to keep in repair the surface of Roxbury Street so far as included in its tracks and a distance of eighteen inches outside of them. The evidence was contradictory as to how far the trench had been filled when the plaintiff sank into it. The plaintiff and some of her witnesses testified that it had been filled level with the street within the location of the defendant's track. The testimony of the witnesses for the city tended to show that there was a hole there, and left it uncertain to what extent the trench had been filled up. The railway company's duty to repair did not begin till the trench had been filled up to a point where the company became responsible for the condition of the portions of the street that were occupied by its tracks (*Leary* v. *Boston Elevated Railway, ubi supra*) ; in other words till it had been filled to a point, where what might be properly described as the surface began. Whether the filling had reached that point was plainly a question of fact for the jury. Unless it had the railway company was not liable. If it had reached that point, then, there would remain the further questions, also for the jury, whether the railway company was or was not negligent in attending to the duty of repair thus imposed upon it, or in providing for the safety of travellers along that portion of the street, and, if it was negligent, whether its negligence contributed to the plaintiff's injury.

For these reasons without considering other matters that have been argued by the plaintiff we think that the exceptions must be sustained as to both defendants.   *So ordered.*

*M. J. Creed & J. P. Crosby,* for the plaintiff.

*P. Nichols,* for the city of Boston.

*E. P. Saltonstall,* for the Boston Elevated Railway Company.