ELIZABETH G. O'NEIL *vs.* CITY OF CHELSEA.

Suffolk.    January 19, 20, 1911. — March 3, 1911.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & RUGG, JJ.

*Way,* Public: defect.

If a city, while constructing a trench in the highway beneath the tracks of a street railway, does not close the street to travel and relies on an employee of the corporation operating the street railway to warn travellers against falling into the trench and to keep it properly guarded, the city is liable under R. L. c. 51, § 18, to a traveller who is injured from falling into the trench by reason of a failure of the employee of the street railway company to do his duty.

At the trial of an action under R. L. c. 51, § 18, by a traveller against a city for personal injuries caused by the plaintiff falling into a trench dug by the defendant in a public street, there was evidence tending to show that the defendant had not closed the street to public travel, that for several days it had been excavating the trench along a street through which the plaintiff passed daily, that the plaintiff had observed that as the work progressed the trench approached street railway tracks on an intersecting street, and that on the morning of the accident he noticed that it was dangerous to walk between the ditch and the tracks; that during the day of the accident the trench had been dug under the street railway tracks, that lights and barriers had been placed to warn persons approaching from every direction, that a barrier had been placed across the tracks where the trench was and that an employee of the street railway company had been left on guard to remove and replace the barrier for the passing of cars and to warn travellers on the street. It did not appear whether there was any arrangement between the city and the street railway company as to the guard's employment. The plaintiff returned from work early in a December evening in a street car which the guard, having removed the barrier, stopped fifteen feet before it reached the trench. The guard did not replace the barrier at once after the car had passed, but stopped to watch some travellers approaching from another street about three hundred and forty feet away. The plaintiff in the meantime had left the car and was walking behind it to reach a place where he could gain access to the sidewalk when, not seeing the trench, he fell into it. *Held,* that the questions, whether negligence of the plaintiff contributed to the accident, or whether the accident was caused solely by a defect arising from negligence of the watchman, for which the city was responsible, were for the jury.

RUGG, J.    This is an action to recover damages for injuries alleged to have been received by a traveller in the exercise of

due care by reason of a defect in a public way.* The undisputed facts appear to be that the defendant had been for several days excavating a trench along Garfield Avenue, and during the day of the accident had continued the excavation across the end of an intersecting street, called Sagamore Avenue, under street railway tracks, which ran from Sagamore Avenue into Garfield Avenue. The plaintiff walked beside this trench twice each day on her way to and from the car at the corner of Sagamore Avenue, and noticed that it was gradually approaching the railway tracks and was guarded by lanterns at night. On the morning of the accident she observed that it was dangerous to walk between it and the track.

Early in a December evening, as she alighted from a street car on Sagamore Avenue, finding dirt piled between the car and sidewalk, she followed the car, and walking between the rails toward Garfield Avenue, fell into the trench, which during the day had been extended under the tracks. She saw no lanterns between the tracks, and did not see the trench. The trench was guarded from different points of approach by several wooden horses, upon which were lanterns. One of these was directly across the street railway tracks, and had been removed by an employee of the railway company to permit the progress of the car from which the plaintiff had alighted, and had not been replaced before she reached the trench. This employee of the railway company was the only person about the trench, and it seems to have been his duty to care for the guards and warn travellers of the danger.

There was sufficient evidence to warrant a finding of due care on the part of the plaintiff. She was walking after nightfall over a part of the highway which was obviously open to travel by the street car, and which bore no sign of danger on its surface except the excavation itself. This might have been found to have been so obscured by shadows or darkness as not to attract attention. There is nothing upon this point to distinguish this from numerous other trench cases, where the due care of the plaintiff has been held to be for the jury. *Prentiss* v. *Boston*, 112 Mass. 43. *Norwood* v. *Somerville*, 159 Mass. 105. *Ben-*

---

* In the Superior Court the case was tried before *Dana*, J. The jury found for the plaintiff in the sum of $1,000 ; and the defendant alleged exceptions.

*nett* v. *Everett*, 191 Mass. 364. *Picquett* v. *Wellington-Wild Coal Co.* 200 Mass. 470. *Dix* v. *Old Colony Street Railway*, 202 Mass. 518. *Torphy* v. *Fall River*, 188 Mass. 310. *Hyde* v. *Boston*, 186 Mass. 115. *Block* v. *Worcester*, 186 Mass. 526. *Gustafsen* v. *Washburn & Moen Manuf. Co.* 153 Mass. 468. *White* v. *Boston*, 122 Mass. 491. *O'Neil* v. *Hanscom*, 175 Mass. 313. *Fox* v. *Chelsea*, 171 Mass. 297. Although the plaintiff might have reasoned that because the work of digging had been progressing in the direction of the tracks, it was likely to cross them if continued on the day of the accident with the same expedition as before, yet she had no knowledge respecting it, and was not bound to speculate as to possible dangers when no indication of any appeared before her. See *Thompson* v. *Bolton*, 197 Mass. 311 and cases cited; *Winship* v. *Boston*, 201 Mass. 273.

There was also ground for a finding of negligence on the part of the defendant. There is no question of a serious defect in the way nor of knowledge of it by the defendant. It may be assumed that the defect in the way was caused by a necessary public work. The way had not been closed to travel by vote of the city council and due notice of such action, whereby the statutory liability of the defendant might be suspended for a time, and therefore its obligation was of the second class described by Loring, J., in *Jones* v. *Collins*, 188 Mass. 53, namely, to use reasonable care and diligence in protecting travellers from the danger. *Connelly* v. *Boston*, 206 Mass. 4. The evidence does not disclose what arrangement, if any, was made between the defendant and the street railway company as to guarding and warning the public of the excavation. If the defendant relied on the employees of the railway to do this, it is liable for any failure on their part. *Stoliker* v. *Boston*, 204 Mass. 522, 537. Whether this duty had been performed depended upon the character of the street, the amount and nature of travel upon it, the hour of the day, the degree of light, the extent of the danger, the kind of barriers, safeguards and warnings provided, and all the other attendant conditions. It was a question of fact whether the watchman of the railway company was negligent in signalling the car to stop fifteen feet from the trench, because he thought passengers might get off and go around the car to the opposite sidewalk and in not replacing

immediately the lighted wooden horse, which he had removed to enable the car to pass, in time to prevent the plaintiff from falling into the trench. He testified that he was watching other travellers,* but it was for the jury to determine whether his first duty was not to replace the wooden horse instantly after the passing of the car. *Blessington* v. *Boston,* 153 Mass. 409. The defendant relies strongly upon *Martin* v. *Chelsea,* 175 Mass. 516. But that case is distinguishable in that there the plaintiff was doing an extraordinary act in daylight, which although not pronounced negligent was held to be something which could not reasonably be expected to happen. The excavation was a small one, amply surrounded by warning signs, and guarded by a watchman. These circumstances were held not to present any evidence of want of the "reasonable care and diligence" required by R. L. c. 51, § 18. The present plaintiff might have been found to have been travelling in a manner, place and direction, which ought to have been anticipated, in such darkness as would not reveal her danger, to a pitfall temporarily unguarded, at a time when the attention of the watchman nominally there to warn was unwarrantably diverted.

*Exceptions overruled.*

*S. R. Cutler,* (*H. W. James* with him,) for the defendant.
*J. B. Dore,* for the plaintiff.

---

* The guard testified " that just before the accident a wagon was coming down Webster Avenue [otherwise known as Revere Beach Parkway, a street parallel to Sagamore Avenue and about three hundred and forty feet from it] in practically the opposite direction in which the car was coming at the same time, and that he was watching both of them at the same time that he stopped the car about fifteen feet from the excavation so that the rear end of the car was about forty feet away from the trench; the team on Webster Avenue got by and then there were two people coming from Webster Avenue and he was looking around at them when the car came over the trench and as it got around he turned and saw the plaintiff falling into the hole; that when the plaintiff fell into the hole the horse which had been across the tracks and had been laid aside to let the car pass was about three feet from the hole on the side of the street; that two or three other people got off the car when it stopped, and he saw them pass over towards the sidewalk; that after warning the barrel team he looked around quickly and looked down Garfield Avenue and saw the two people mentioned above coming up towards him and very near the trench; that at that time he didn't see any other object in the street except the two people, and that in the meantime the car passed around the turn."