ISABEL MORRISON, administratrix, *vs.* QUINCY MARKET COLD STORAGE AND WAREHOUSE COMPANY (and three companion cases [1]).

Suffolk.   October 26, 1948. — December 30, 1948.

Present: QUA, C.J., LUMMUS, DOLAN, WILKINS, & WILLIAMS, JJ.

*Negligence,* Use of way, Trench. *Way,* Public: excavation, defect.

One making an excavation in a public way under a municipal permit requiring him to "place and maintain" safeguards "through the whole of every night," has a duty to travellers analogous to that of the municipality under G. L. (Ter. Ed.) c. 84, §§ 1, 15.

It was error to instruct a jury that a defendant, who made an excavation in an important public way in a large city under a municipal permit which required him to "place and maintain" safeguards "through the whole of every night," discharged his full duty to travellers if he placed adequate safeguards around the excavation at the close of work for the day unless subsequently he actually received notice of their

---

[1] The companion cases are by Delbert E. Hirst, Isabel Morrison, and Marjorie Matthews against the same defendant.

removal in time to remedy the situation; the jury should have been instructed that his duty was not only to place adequate safeguards but also to take reasonable precautions in the circumstances to maintain them and to learn of their removal if they should be removed.

FOUR ACTIONS OF TORT. Writs in the Superior Court dated May 14, 1946.

The cases were tried before *Burns*, J.

In this court the cases were submitted on briefs.

*J. A. McArdle & F. D. Harrigan*, for the plaintiffs.

*G. Petersen*, for the defendant.

WILKINS, J. These are four actions of tort, two by owners for damage to their automobiles and two by occupants of one of the automobiles for personal injuries, which occurred by reason "of a hole and depression and defective condition" in Atlantic Avenue, Boston, existing because of the defendant's negligence. The jury returned verdicts for the defendant, and the plaintiffs allege exceptions to the charge.

There was evidence as follows: On August 14, 1945, about 1:15 A.M. George A. Morrison [1] was driving an automobile owned by him on Atlantic Avenue, a public way. The female plaintiffs were riding with him. Suddenly the automobile went into and bounced out of a ditch two feet by fifteen feet and four feet deep. As they approached, they saw no barriers at or near the hole and no warning lights. When they got out of the automobile after the accident, they saw no lights or barriers. The plaintiff Hirst, driving his own automobile, was following the Morrison automobile, saw it swerve, drop, and then bounce, and, although he attempted to stop, was unable to do so, and his automobile went into and out of the ditch. The defendant had received from the city of Boston a permit to open the street, and on August 13 its employees made an excavation about five feet by five feet and four feet deep. [2] At 4:30 P.M. when the employees left, they placed four wooden barriers around the hole, and left six lanterns, properly lighted, hanging on

[1] Isabel Morrison, administratrix of the estate of George A. Morrison, was substituted as party plaintiff in the action brought by him.

[2] The defendant was repairing a pipe, according to an admission at pretrial hearing.

the barriers. Lighted lanterns were also placed on top of the pile of dirt, and boards were placed over the excavation. They then went to a job at another location. At 8 P.M. they passed by the excavation, and conditions were unchanged. The following morning when they returned to work, they found some of the wooden barriers and some of the lanterns were broken.

A condition of the permit was that the person receiving it "shall place and maintain from the beginning of twilight, through the whole of every night, over or near the place so occupied, opened, obstructed or used, and over or near any dirt, gravel or other material placed in or near such place, a light or lights sufficient to protect travellers from injury." [1]

The judge charged the jury in substance that, in working under the permit, the defendant's duty was "analogous" to that of a city or town in taking care of the street; that that duty was the statutory one [2] to keep the highway reasonably safe for travellers;[3] that the defendant was held to reasonable care only; and that if, at or about sunset, barriers with lights sufficient to give warning to travellers were put around the excavation, the defendant performed its duty notwithstanding that the barriers and lights might have been removed by 1:15 A.M., unless the defendant knew about their removal in time to remedy the situation. In this connection the judge paraphrased the charge approved by this court in *Doherty* v. *Waltham*, 4 Gray, 596, 597. The charge in the *Doherty* case was "that if the town had notice of the well [in the highway] being open, and at sunset sufficient barriers were placed around it to make it safe for the night to persons using ordinary care, the town would not be responsible for the injury to the plaintiff, if those barriers were afterwards removed, whether by accident or design, unless the town had reasonable notice of the removal

---

[1] The permit was issued pursuant to Revised Ordinances of 1925 of the City of Boston, c. 27, § 9, and the quoted language is identical with that of the ordinance.

[2] G. L. (Ter. Ed.) c. 84, §§ 1, 15.

[3] As to the liability of a city or a town, see *Hyde* v. *Boston*, 186 Mass. 115, 118; *Jones* v. *Collins*, 188 Mass. 53, 55–56; *Winship* v. *Boston*, 201 Mass. 273, 275; *Mulvaney* v. *Worcester*, 293 Mass. 32, 34; *Sullivan* v. *Saugus*, 305 Mass. 127, 130–131.

of the barriers and that the road had by such removal
become again dangerous." The charge in the cases at bar
concluded: "Visualize as best you can what the situation
was down there on Atlantic Avenue around sunset at or
about the time the employees of the Quincy Market quit
work for the night and how did they leave the place when
they did quit work. And . . . according as you find as to
how they left the place there, will determine whether or
not there is liability on the part of this defendant."

The plaintiffs excepted (1) to the statement that liability
in these cases was analogous to that of a city or town; (2)
to that portion of the charge in which the judge read from
*Doherty* v. *Waltham*, 4 Gray, 596; and (3) "to any other
portion of the charge referring to the liability of the defend-
ant being determined as of conditions existing at sunset."

The plaintiffs have not argued their first exception. We
think that it was accurate to charge that the defendant's
duty under the permit was analogous to that of a city or
town. See *Norwood* v. *Somerville*, 159 Mass. 105, 110–112.

The defendant contends that the third exception is to a
small, detached portion of the charge (*Draper* v. *Cotting*,
231 Mass. 51, 63), that the charge must be read as a whole,
and that the jury must have understood it accordingly.
*Hamilton* v. *Boston Elevated Railway*, 213 Mass. 420, 423.
We assume this point in the defendant's favor.

The defendant further contends that, as there was no
evidence that "it knew or should have known that the
barriers and lights had been removed or that there were any
unusual conditions calling for further precautions," the
detached portion was correct. We do not agree with this
contention, however, and, moreover, we think that there
was prejudicial error in the related question raised by the
reading from *Doherty* v. *Waltham*, which is the basis of the
second exception. The case last referred to, it should be
observed, arose before the days of populous cities and towns,
when traffic, as we know it, was wholly unknown, and long
before the appearance on our highways of the automobile
and those heavy, jarring motor vehicles, the truck, the
trailer, and the bus.

This court is not without knowledge of the nature of Atlantic Avenue, an important, crowded thoroughfare on which much traffic passes not only in the daytime but also after nightfall. See, for example, *Stoliker* v. *Boston*, 204 Mass. 522; *Boston Elevated Railway* v. *Commonwealth*, 310 Mass. 528. The charge, when read as a whole, instructed the jury that the defendant discharged its full duty if its employees had placed adequate safeguards upon discontinuing work for the day so long as the defendant did not actually learn of the removal of those safeguards. The permit, however, imposed an obligation upon the defendant to "maintain" as well as to "place" lanterns. We think that the jury could have found that this requirement was not met on a street like Atlantic Avenue by omitting to exercise reasonable oversight of the site of the excavation. Apparently the precaution was not taken of any planned, periodic observation of the spot. The single glimpse which the defendant's employees had at 8 P.M. was entirely fortuitous. Granting that the defendant had this chance knowledge that all was well up to that time, it was a question for the jury whether the defendant should have inspected its barriers and lanterns before 1:15 A.M. and whether such failure was a cause of the accident. "Ordinarily the question whether a particular obstruction of a public way is a reasonable one or is negligently maintained, is one of fact for the jury." *Hurley* v. *Boston & Maine Railroad*, 228 Mass. 365, 367.

This case falls within the authority of *Myers* v. *Springfield*, 112 Mass. 489, which shows that the rule given in *Doherty* v. *Waltham*, 4 Gray, 596, has not been one of invariable application. In the *Myers* case the trial judge refused to charge in substantial conformity with that rule, but qualified it by adding, "unless the jury believe that it was the duty of the city to have made provision for receiving notice in case of removal" (page 490). This qualification was upheld by this court. At page 491, it was said: "There can be no doubt, in case of an excavation in a public way, that it would be the duty of a town not only to erect suitable barriers for the security of the traveller, but also to take

all reasonable and proper care to maintain the barriers so erected; and the question as to what degree of care is reasonable depends on the special circumstances of each case. It is easy to suppose a case in which, in the language of the judge at the trial, provision ought to be made for receiving notice in case they should be removed. In case of a dangerous excavation in the sidewalk in one of the most crowded thoroughfares of a populous city, the throng of passengers might be so great and so continuous during the first half of the night, that the chance of disturbance of the barriers by accident or recklessness, or even by the wilful misconduct of mischievous persons, might be such as to require some extra precaution on the part of the city authorities. It might be, under some circumstances, that the mere erection of a barrier, and then leaving it to itself without any oversight, or without having it occasionally visited, would not be all that was required by a reasonable regard for the safety of travellers."

To the same effect is *Norwood* v. *Somerville*, 159 Mass. 105, where the plaintiff was hurt after dark by falling into a trench dug by the city in a street for the purpose of laying waterpipes. This court approved (page 112) a charge (pages 110–111), which was, in substance, that the city not only was under the duty to erect reasonable safeguards, but was under the further duty to maintain them thereafter. See *Dolan* v. *Charles J. Jacobs Co.* 221 Mass. 256, 258.

This principle has been applied in cases where the municipality knew or should have known that the barriers were taken down at times to permit the passage of traffic. *Prentiss* v. *Boston*, 112 Mass. 43. *Howard* v. *Mendon*, 117 Mass. 585, 590. *Blessington* v. *Boston*, 153 Mass. 409, 411–412. *Fox* v. *Chelsea*, 171 Mass. 297, 301.

*Exceptions sustained.*