EUGENE MASTERSON, Respondent, v. CITY OF MECHANICVILLE et al., Appellants.

ROBERT J. COUSER, JR., Appellant-Respondent, v. CITY OF MECHANICVILLE et al., Appellants, and EUGENE MASTERSON, Respondent.

Third Department, March 9, 1949.

*James T. Harrington,* for Eugene Masterson, plaintiff-respondent.

*Frank A. Tate,* attorney (*Joseph A. Romano* with him on the brief), for appellant-respondent.

*Thomas Ryan,* attorney (*John F. Doyle* and *James G. Heffernan* of counsel), for City of Mechanicville, appellant.

*Whalen, McNamee, Creble & Nichols,* for Boston and Maine Railroad Company, appellant.

*Dugan, Barkhuff & Dugan,* attorneys (Kenneth J. Dugan of counsel), for Eugene Masterson, defendant-respondent.

HEFFERNAN, J. The actions involved here arose out of an automobile accident which occurred at about 2:00 A.M. in the morning of October 21, 1946, in the defendant City of Mechanicville, at a public square, formed by the intersection of four streets; namely, Viall Avenue, Railroad Street, Upper Railroad Street and Elizabeth Street. It is difficult to give a pen picture of the situation which existed at this point. Reference to the exhibits is necessary to obtain a comprehensive view.

Viall Avenue which runs in a northerly and southerly direction crosses the tracks of defendant, Boston and Maine Railroad, at the northeast corner of the square and continues until it intersects Railroad Street and Upper Railroad Street which run in a southeasterly-northwesterly direction across the square. Elizabeth Street comes into the square from the southwest and runs thence northeasterly.

The tracks of defendant railroad, two in number, extend in an easterly and westerly direction, crossing Viall Avenue, thence along the northerly side of the square crossing upper Railroad Street sixty feet west of Viall Avenue. The extreme southerly side of the square is crossed by tracks of the Delaware and Hudson Railroad Company.

The square is bounded on its northern and southern limits by railroad tracks, is substantially level, composed of brick and macadam paving, which at its center measures 110 feet from east to west, and the northerly edge between the Viall Avenue crossing and the Railroad Street crossing is about two feet south of the tracks of defendant railroad.

Viall Avenue is about fifty feet in width, including a sidewalk on each side. The crossing consists of planking along each of the four rails with macadam pavement between the rails, the full width of the street, and is level with Viall Avenue and the square. Between the Viall Avenue crossing and upper Railroad Street, a distance of sixty feet, there is no planking or other fill, and the ties supporting the rails are laid on the surface of the ground between the two crossings. At the northwest corner of this crossing is a railroad crossing sign located between the sidewalk and the street. The square is illuminated by three street lights. The first is located adjacent to the Delaware & Hudson tracks; the second opposite that company's railroad station, which is located considerably south of the square; the third is located on Viall Avenue north of defendant railroad's tracks. No barriers or warning signs whatsoever are maintained on the northerly side of the square adjoining defendant railroad's tracks.

Viall Avenue and Elizabeth Street do not intersect. One entering the square from Elizabeth Street must make an extreme right turn after crossing the Delaware & Hudson tracks and then a left turn in order to reach Viall Avenue.

The plaintiffs, Masterson and Couser, twenty-four and twenty-five years of age, respectively, were residents of Valley Falls. They arrived in Mechanicville on the night of October 20th in an automobile owned and operated by Masterson. They had refreshments in a diner located on Elizabeth Street a short distance south of the point where the tracks of the Delaware & Hudson Railroad cross that highway. Neither of the plaintiffs had ever been in the vicinity of the accident on any prior occasion. About two o'clock the following morning they left the diner intending to go to their respective homes. The car failed to start and they pushed it in the direction of the square. The movement of the car caused the motor to operate. After the car started, with Masterson driving and the coplaintiff sitting alongside the operator, it proceeded northerly in the direction of the square. Masterson proceeded straight ahead across the square guided by two street lights, one on his right and one on his left, and by the black pavement, to a point just west of where Viall Avenue crosses the tracks of defendant railroad where his car struck the depression, causing him to lose control, hit the rails, continue across the four rails and come to a stop when it struck and demolished the post of the crossing sign, as a result of which both plaintiffs were injured. The plaintiffs were the only eye witnesses of the accident.

Plaintiffs instituted these actions against the railroad and the city on the theory that both were negligent. In addition to his action against the corporate defendants, Couser joined Masterson as a defendant in his action contending that the latter was also negligent.

The complaints in each action charged defendants, the railroad and the city with negligence because of their failure to provide warning signs, signals or barriers of any kind and in constructing and maintaining the square in a dangerous condition. In his complaint Couser alleged that Masterson was negligent in the operation of his automobile.

In each action the answers denied negligence on the part of the defendants.

After a trial the jury rendered verdicts against the railroad and the city; one in favor of Masterson for $3,000 and one in favor of Couser for $10,000 and a verdict of no cause of action in Couser's suit against Masterson. From judgments entered on

such verdicts the defendants and plaintiff Couser have come to this court.

There is evidence in the record from which the jury could have found that at the scene of the accident, the headlights of Masterson's car were on and were in good condition, but that visibility was limited to fifty feet by reason of smoke and mist; there was also proof at such time that the car was proceeding at a rate of speed not in excess of fifteen miles an hour.

It is undisputed that there were no lights, warnings, signals or barriers of any kind to indicate where the pavement ended and defendant railroad's tracks were laid, nor was there any sign to warn travelers that it was necessary to make a right turn to enter Viall Avenue rather than continue straight ahead as Masterson did. Proof was also adduced to show that prior accidents had occurred at the same place under conditions similar to those existing at the time of this accident.

In describing how the accident happend Masterson testified as follows:

" Q. Tell the jury what you could see? A. Through the smoke I couldn't see too good but I could see light on the right of me and light on the left of me. I think they were street lights.

" Q. Continue. A. Well, I see they were street lights and I continued to go between them and I kept to the left with one on the right and I was going right straight.

" Q. You kept to the left of the one on the right? A. Yes.

" Q. You continued more or less in the direction between those lights? A. Yes, I did. * * *

".Q. You proceeded between those lights? A. Yes.

" Q. You could see black pavement ahead of you? A. Yes.

" Q. Then what happened? A. Well, I kept watching the black pavement and kept going straight and the next thing I knew I was on the rails and lost control of my car.

" Q. Then what happened? A. Then I hit a pole and stopped."

He testified that he did not see anything except the two street lights and kept right on going between those lights. He knew the road was ahead of him and did not know there was a crossing there, and kept going straight ahead until he hit the tracks and his car bounced over the rails and hit the crossing post.

The testimony of Couser corroborates that of Masterson.

The learned Trial Justice submitted the cases to the jury in an exceptionally clear and comprehensive charge in which the rules of law to be applied were correctly and concisely expounded.

It seems to us that on the evidence in the record before us the jury was justified in finding that both defendants, the railroad and the city, were negligent. There is nothing in the evidence to indicate that the verdict in Couser's action against Masterson is tainted with legal error.

Section 21 of the Railroad Law imposes two obligations upon a railroad where it extends along, across or upon any street or highway. It must maintain its railroad in such a manner as not to unnecessarily impair the use of the highway. Where it crosses a highway it is required to maintain a roadway at least sixteen feet wide. The roadway must be constructed of planking or equally serviceable material and shall extend at least one foot outside of the outside rails through and across the entire space between the rails at such crossing.

It is conceded that the railroad tracks crossing Viall Avenue were maintained in accordance with the statutory requirements.

However there is a continuing obligation under the statute on the part of a railroad to maintain it in such manner as not to impair the usefulness of the highway adjacent thereto. From the exhibits in this case it is quite obvious that a traveler, unfamiliar with the situation, approaching and passing through the square would be justified in continuing in a straight line in the absence of reasonable warning or notice of a change of direction in the highway. The condition which exists at that point is extremely dangerous and might very well deceive a reasonably prudent and careful person. The very fact that other accidents happened there should have warned both defendants, the railroad and the city, of potential danger lurking in that area and ordinary prudence required them to take reasonable precautions for the protection of persons lawfully using the highway. The physical conditions surrounding the place of this accident were of such a nature as to lull the operator of the car into a feeling of security instead of awakening in him a sense of danger.

The evidence justifies a finding of negligence upon the part of defendant railroad (*Sturman* v. *New York Central R. R. Co.*, 280 N. Y. 57; *City of Mount Vernon* v. *New York, New Haven & Hartford R. R. Co.*, 232 N. Y. 309; *Allen* v. *Buffalo, Rochester & Pittsburg Ry. Co.*, 151 N. Y. 434; *Clawson* v. *Central Hudson Gas & Electric Corp.*, 298 N. Y. 291).

The evidence likewise warrants a finding of negligence upon the part of defendant city (*Rivero* v. *City of New York*, 290 N. Y. 204).

In the case cited it was held that where the City of New York had constructed an elevated highway and had sold the bed of the former street thereunder, north of a certain point, for use as a railroad yard, the Court of Appeals held it was for the jury to say whether it was the city's duty at that point to safeguard travelers against mistaking the railroad property for the open public course, and that it was error to dismiss the complaint of one who was injured when he drove his automobile along the public street and on into the railroad property. In writing the opinion granting a new trial Judge LOUGHRAN, speaking for a unanimous court said (p. 207): " We think it was for a jury to say whether the case for the plaintiffs came within a rule of municipal liability which long ago was expressed by us in this manner: ' Where a road is so constructed or altered as to present at one point two paths, both of which exhibit the appearance of having been used by travelers, and one of them leads to a dangerous precipice, while the other is quite safe, it is the duty of those having charge of the road to indicate, in a manner not to be mistaken by day or by night, that the unsafe path is to be avoided; and, if it cannot be otherwise done, to put up such an obstruction as will turn the traveler from the wrong track.' (DENIO, C. J., in *Ireland* v. *Oswego H. & S. Plank Road Co.,* 13 N. Y. 526, 532. See 15 Amer. & Eng. Encyc. of Law [2d ed.] p. 443. Cf. *Corcoran* v. *City of New York,* 188 N. Y. 131; *Jewhurst* v. *City of Syracuse,* 108 N. Y. 303; *White* v. *Boston,* 122 Mass. 491.)"

Whether or not plaintiffs were guilty of contributory negligence presents only a question of fact and we may not say that the jury erred in absolving them from carelessness.

Finally it is urged by defendant railroad that the verdicts are excesssive. In the case of Masterson the proof indicates that he had multiple contusions and abrasions extending over his entire body. He suffered from a serious chest injury. His special damages amounted to $400. The award of $2,600 for pain and suffering is not out of proportion to his injuries.

Couser sustained numerous cuts to his face, in one of which there was a piece of glass an inch in length. There was a complete wound through the mouth, through the mucous membrane. It required three hours to suture the wounds. There is a laceration one and one-half inches on the right forehead, four on the left forehead varying from one inch to three quarters of an inch, a two and one-half inch laceration on the left cheek and one of a like size under the right eye; also a one-half inch laceration on the nasal labial fold near the nose and a like laceration at the

corner of the left side of the mouth. All told plaintiff has ten scars as a result of this accident all of which are disfiguring and many of which are permanent. Between seventy and eighty stitches were required in the treatment of those wounds. Plaintiff also suffers from numbness to his face and from severe headaches. His special damages at the time of the trial approximated $1,000. The proof indicates that future medical treatment will be required. The jury observed this man's physical condition and heard the testimony of the physician who treated him which was uncontroverted.

The fixation of damages in cases of this character is peculiarly the function of a jury and an award by that tribunal will not be disturbed by an appellate court in the absence of proof that the jury disregarded the law or was influenced by passion, prejudice, bias or other improper motives. No such issue is presented by this record.

The judgments in favor of plaintiffs against the corporate defendants are affirmed, with separate bills of cost and disbursements to each plaintiff and the judgment and order of dismissal in the action of Couser against Masterson are affirmed, without costs.

FOSTER, P. J., BREWSTER and DEYO, JJ., concur; SANTRY, J., concurs as to the appellant, the City of Mechanicville, but dissents as to the appellant, The Boston & Maine Railroad Company.

Judgments in favor of plaintiffs against the corporate defendants affirmed, with separate bills of costs and disbursements to each plaintiff, and the judgment and order of dismissal in the action of Couser against Masterson affirmed, without costs.