DANIEL C. HOWARD *vs.* INHABITANTS OF MENDON.

Worcester. Oct. 1, 1874. — June 22, 1875. COLT & MORTON, JJ., absent.

County commissioners adjudicated that a highway in a town should be located anew, and proceeded to locate it substantially over the old location, widening it in some places and making changes in the grade, and ordered the town to make the changes within a certain time to the approval of the county commissioners. The town began the work, and put up barriers with bars in them, and a notice that there was no passage through. A traveller in the night-time, without notice that the way was impassable, entered upon the road, the bars being down, and, while in the exercise of due care, was injured by a defect at a point included in the location of the old road. *Held,* that the town was liable if the barriers were insufficient, and that whether they were insufficient was a question for the jury.

Evidence that a town, while changing the grade of a highway, knew or had reason to know that barriers, which it had placed at each end of the highway, had been constantly taken down and left down, is competent on the issue whether the precautions taken were sufficient to exclude travellers from the way.

TORT to recover for injuries sustained by reason of an alleged defect in a highway in the defendant town. Trial in the Superior Court, before *Allen,* J., who allowed a bill of exception in substance as follows:

The plaintiff was driving in the evening of December 13, 1871, from Milford to Mendon, when his carriage struck a mound of earth and was upset, and the injury declared for sustained. Prior to June 6, 1870, a highway had existed from a point in Mendon to the line of Milford which the defendant town was before that time bound to keep in repair. On June 6, 1870, a petition was filed with the county commissioners setting forth that said highway, from said point in Mendon to a point in Milford, was in many places steep, difficult and inconvenient, and that the grade might be materially improved by a relocation and by the alteration of the location of said highway, and that public convenience and necessity required that said highway should be laid out anew, and altered so as to avoid the steepness of said grades. The petition prayed for such alterations, locations and specific repairs as public convenience and necessity require, and for discontinuance of such parts of the old road as said board may deem expedient. After due notice and hearing, the commissioners, on July 17, 1871, adjudicated "that public convenience and necessity require that the highway aforedescribed be located anew, with altera-

tions;" and after due notice, on August 24, 1871, the commis-
sioners "proceeded forthwith to locate anew with alterations."
The description of the location was by metes, bounds and courses,
and "said road throughout its whole extent is laid and located
fifty feet in width on the easterly side of the metes and bounds
aforesaid, and adjoining thereto," with certain additional widths
for materials. The description further states that "said highway
is relocated substantially over the old location as indicated by
the fences and old walls. In some places it extends beyond the
fences a few feet." The commissioners fixed the grade of said
road, and that part of it which was in Mendon was graded either
higher or lower than the grade of the old road at every point.
The commissioners further ordered as follows : "And it is fur-
ther ordered, that all roads crossing, intersecting or connecting
with the road aforesaid be so graded by raising or lowering the
same at their points of crossings, intersections and connections
therewith as to render them safe and convenient for travellers
passing thereon." After ordering that sixty days be allowed to
owners of land over which the road is located, to remove wood,
timber and fences, the order concludes as follows : "And it is
further ordered, that the said road be worked and made hard and
safe and convenient for travellers to pass over with their cattle,
horses, teams, carts and carriages, and that it be made and com-
pleted by the said towns of Mendon and Milford, on or before
July 1, 1872, to the acceptance of the county commissioners."

The defendant town let to contractors its part of the road to
construct to the acceptance of the county commissioners, and said
contractors sublet the entire job. Work was commenced on it
on or about November 27, 1871. On the day work was com-
menced, or the following day, the original contractor placed across
the road, at or near each end of the part of the road in Mendon,
barriers as follows : At the west end, a bar post on the south
side, and about ten feet north of it another bar post with two
bars, which could be removed, extending between them, and from
the north bar post two poles nailed into the post, and extending
to the north side of the road. At the east end, a bar post was set
at the north side of the road, and about ten feet south of it an-
other bar post, with two removable bars extending between them,
and from the south post two poles, nailed into the bar post, ex-

tended to the south side of the road. These fences and bars extended across the entire road. He also put up a sign at the west end, in plain sight of travellers, with the words conspicuously painted on it, " No passing over this road ; " and about a half-mile east of the east end of that part of the road which was in Mendon, at the intersection of another road, in order that travellers might turn off, a sign exactly similar to the one above described, and both signs remained till after the accident.

The accident happened on that part of the road lying in Mendon, within the location of the road as located anew, and within the location of the old road as shown by the fences. The mound which the carriage struck was a heap of earth placed there by the sub-contractor, with a stake set in it for a grade stake. The mound was in the wrought part, and in or near the wheel rut of the travelled part of the old road. At that point the grade was to be raised between three and four feet, and the lines of the location lay a few feet south of the lines of the old location, as shown by the fences, but the whole wrought part of the old road was within the new location. The filling had not been begun at that point, but the work of making the road was going on at other points nearer Mendon. The town of Milford had not begun to construct their part of said road. The evidence tended to show that when the accident happened the plaintiff was driving from Milford to Mendon about ten o'clock in the evening over said road ; that he passed the fence at the east end (the bars being down) ; that he did not see the fence or bars or posts or sign, and was not aware of any barriers ; that he had been over the same road before, but not since it was located anew, and he knew nothing of the work going on upon it. The plaintiff was a resident of New Hampshire, and only acquainted with the neighborhood and road where the accident happened by occasional visits. The evidence further tended to show that the sub-contractor employed a man who lived near the east end of the road in Mendon to put up the bars at that end at night, and that he did put them up on the night of the accident about eight o'clock in the evening. The plaintiff denied that this was true. The evidence also tended to show that before the accident, and after the work commenced on said road, people frequently passed over said road, taking down the bars and putting them up again, and that fre-

quently the bars were found left down ; that the fence and bars had been taken down several times at each end of the road by unauthorized persons. There was another highway leading from Milford to Mendon, about a mile or mile and a half longer than the route over this road. It did not appear that the plaintiff knew of it. The evidence tended to show that the day before the accident, the sub-contractor finding the bars down at the east end, put them up and nailed them into the post. The foregoing was all the evidence material to the questions raised in this bill.

At the close of the evidence, the defendant asked the judge to rule that there was no evidence that there was a highway at the point of the accident which the defendant was then bound to keep in repair, and to direct a verdict for the defendant on that ground. This request was refused, and the defendant then asked the judge to rule as follows : " If the defendant placed a fence or barrier across the way sufficient to notify a person of ordinary prudence that the way was not for travel, and that was there at the close of the day of the accident, the defendant would not be liable, and it would make no difference that the same or a similar fence or barrier had been before frequently removed by unauthorized persons." The judge gave the first part of this instruction, and declined to give that part of it following the word " liable."

The judge instructed the jury upon the points raised as follows: " The way in question was on the evidence a highway which the defendant was bound to keep in repair, and was liable to the plaintiff if he was injured by a defect in it while he was travelling over it and using due care. The defendant had a right to repair the road and to put the mound of earth where it was for that purpose, but would be bound to fence or guard it in some manner so as to prevent travellers from injury by means of it. The defendant could protect travellers from injury and the town from liability in either of two ways: first, by placing and keeping a sufficient guard or barrier at the place where the mound was, so as to keep travellers away from it ; second, by placing and keeping a suitable and sufficient fence or barrier across the highway at the end of the part that was being constructed, so as to notify travellers that the way was not for use and to prevent the using of it. If the defendant placed a proper and sufficient fence or barrier across the way at the east end, the direction from which

the plaintiff came, sufficient and suitable to notify a person of ordinary prudence that the way was not for use, and such fence or barrier was there in place at the close of the day of the accident, the defendant would not be liable. It is for the jury to say whether the fence which was placed across the way at the east end was suitable and sufficient. If the town attempted to close the whole road by barriers, and knew or had reason to know that those barriers had been constantly and repeatedly taken down or left down, that knowledge is to be considered by the jury in determining whether the defendant's precautions were such as were reasonable." The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*H. B. Staples & F. P. Goulding,* for the defendant.

*W. S. B. Hopkins,* for the plaintiff.

ENDICOTT, J. The petition addressed to the county commissioners set forth that the highway leading from Mendon to Milford was difficult and inconvenient, and prayed, that " such alterations, locations and specific repairs " might be made therein, as the public convenience required. The commissioners having adjudicated that alterations were necessary, proceeded to locate the highway anew, fifty feet wide, "substantially over the old location, as indicated by fences and walls," in some places extending beyond the fences a few feet. Alterations were made in the grade through the entire length of the road. The changes within the town of Mendon were ordered to be completed by the town within a certain time to the satisfaction of the commissioners. The work was begun by the town on November 27, 1871, and barriers, with bars for the passage of teams, were erected at each end, with notices thereon: " No passing over this road." The accident happened on the evening of December 13, at a point within both locations, and the mound of gravel, against which the plaintiff's carriage struck, was in or near the wheel tracks of the travelled part of the old road. There was evidence that the barriers or bars were down at the end of the road where the plaintiff entered, and that the plaintiff had no notice that it was impassable.

The ruling was in substance correct, that this was a highway which the defendant was bound to keep in repair, and that the town was liable to the plaintiff, if he was injured by the defective

condition of the road while travelling over it and using due care, The county commissioners did not lay out a new highway, but made an alteration and new location of an existing highway. In such case, the old highway is not discontinued, if it lies within the new location ; and such parts of it as lie without are discontinued by force of the alteration itself. *Hobart* v. *Plymouth,* 100 Mass. 159, 165. The whole of the old way in this case was within the new location ; the changes were principally changes in grade, and a widening of a few feet beyond the lines of the old fences. The relations of the town to the way itself, and the obligation to keep it in repair, were not changed by these proceedings. Its duty remained the same. And when it undertook to carry out the order of the county commissioners, and make the necessary changes and repairs, the town was required to take all proper precautions for the safety of travellers.

The obligation on the part of the town to do this, in the execution of the order, was the same as if the town of its own motion had undertaken to make the changes and repairs ; or as if the changes were made by another, authorized by law to make them. If a bridge is swept away, the town, while rebuilding or repairing it, must guard the approaches with proper barriers. If a railroad corporation, duly empowered, makes alterations in a highway, the town is liable, if the way is rendered unsafe thereby, and it has failed to warn travellers of its condition. *Currier* v. *Lowell,* 16 Pick. 170.

It was a question for the jury, therefore, whether the barriers placed at the east end of the road were suitable and sufficient under the circumstances and upon the facts presented. If they were suitable and proper, the defendant would not be liable ; if unsuitable and insufficient to protect a traveller in the night-time, using due care, or to warn him of the condition of the road, the town would be liable. *Doherty* v. *Waltham,* 4 Gray, 596. *Myers* v. *Springfield,* 112 Mass. .

The fact that the defendant knew or had reason to know that the barriers had been constantly taken down and left down, was competent and material, as bearing on the question whether the precautions taken were such as were required under the circumstances to exclude travellers from the way. To the instruction given on this point the defendant has no ground of exception.

*Exceptions overruled.*