## MARY TORPHY *vs.* CITY OF FALL RIVER.

Bristol.    October 25, 1904. — June 9, 1905.

Present: KNOWLTON, C. J., BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Way*, Defect in highway.

To carry out the report of the commissioners appointed under St. 1900, c. 472, providing for the abolition of certain grade crossings in Fall River, the city council of that city authorized the mayor to designate in writing the streets to be closed temporarily and the length of time and the conditions under which they should remain closed. Acting under this order the mayor authorized the railroad company which was required by the commissioners to perform the work, to close a part of a certain street while it was being wrought to a new and lower grade. *Held*, that this did not relieve the city while the work of construction was going on from its obligation either to keep the street in reasonable repair for the use of travellers, or to give notice to the public by signs or barriers that it was closed.

In an action against a city for injuries from an alleged defect in a highway, if it appears, that a railroad company had been making a change of grade in the street under an order of commissioners appointed under a grade erosing act, that the mayor under authority from the city council had designated the street as one to be closed temporarily during the work of construction, that barriers with suitable signs were erected by the railroad company and subsequently were removed, leaving unguarded an open trench which had been dug for the purpose of lowering a water main, and that the plaintiff fell into the trench and was injured, there is evidence of a defect in the highway and of notice of the defect to the defendant.

In an action against a city for injuries from an alleged defect in a highway, if it appears that the plaintiff was passing at night through an unlighted street in which she knew that the work of lowering the grade of the street to carry it under the track of a railroad had been going on for some time, but that " it was finished for people to walk on it," and that the plaintiff was injured by falling into an open trench from which barriers had been removed, there is evidence for the jury that the plaintiff was in the exercise of due care.

TORT, by a woman about fifty years of age, living on Ballard Street in Fall River, for injuries from falling into an unguarded

trench in that highway, when returning to her house at about a quarter past eight o'clock on the evening of November 10, 1902. Writ dated November 26, 1902.

At the trial in the Superior Court *Schofield,* J. refused to order a verdict for the defendant or to make certain rulings requested by the defendant. He submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $1,200. The defendant alleged exceptions, raising the questions stated in the opinion.

*H. A. Dubuque,* for the defendant.

*J. W. Cummings,* ( *C. R. Cummings* with him,) for the plaintiff.

BRALEY, J. In the separation of grades under the provisions of St. 1900, c. 472, to carry out the report of the commissioners, it became necessary during the progress of the work temporarily to close certain of the public ways of the city. For this purpose a general order had been passed by the city council authorizing the mayor to designate in writing these streets, and to fix the length of time, and the conditions under which they should remain closed. Acting under this order, he authorized the railroad company, which was required to perform the work, to close a part of Ballard Street in which the plaintiff lived, while it was being wrought to a new and lower grade that had been established.

The defendant takes the position that while this was being done, and until reopened to travel, it was relieved by the intervention of the railroad company of all liability for a defective public way caused by the act of reconstruction. But if held not to be exempt it then urges that the barrier and signs which had been put up giving notice of its closure were maintained, or that the general condition of the surface of the street was a sufficient warning to travellers that it was not open. It also denies that it had notice of the defect which caused the plaintiff's injury, and claims that at the time of the accident she was negligent.

The work may be considered as in the nature of specific repairs which ordinarily would be made by the defendant, but if done by the railroad company the character of the general undertaking of which the change of grade formed a part did not relieve the location within the limits of the layout from the public easement. This could be accomplished only by a legal discontinuance either by the defendant, or upon a taking for another

public use.   *Tinker* v. *Russell*, 14 Pick. 279.   See *New England Telephone & Telegraph Co.* v. *Boston Terminal Co.* 182 Mass. 397, 400.

Consequently neither the order, nor the action taken thereunder, worked a discontinuance.   It still remained a public way, which the defendant was charged with the primary duty of keeping reasonably safe for the use of travellers.   Pub. Sts. c. 52, § 1.

If the alteration formed part of a public improvement over the whole of which the city did not exercise municipal control, yet the street could not lawfully be closed except by its permission when acting within the implied power that necessarily must be invoked to temporarily exclude travellers from a public way that is being partially reconstructed.   *Jones* v. *Collins*, 177 Mass. 444; *S. C. ante*, 53.

By the interposition of the railroad company the city was not deprived of this right of control, nor relieved of its statutory duty.   *Currier* v. *Lowell*, 16 Pick. 170.   *Merrill* v. *Wilbraham*, 11 Gray, 154.

Nor could it delegate this requirement thus directly imposed, and thereby secure exemption from liability to those suffering injury if this duty remained unperformed.   *Howard* v. *Mendon*, 117 Mass. 585.   *Blessington* v. *Boston*, 153 Mass. 409.

But while the alteration called for by the report was being made, the defendant, under the method it adopted, could give notice to the public by signs, or a barrier, that the street had been closed, and if this was done properly then its responsibility would be suspended during the time either or both were maintained, and until it was reopened to travel.   *Jones* v. *Collins, ubi supra.*

That such a barrier, with suitable signs displayed thereon, had been erected by the railroad company before the work of excavating began does not seem to have been in dispute, or that if either had been maintained the plaintiff could not recover.

But if the bars and posts used for this purpose were discontinued before the final grade was finished travellers well might infer that they were at liberty to enter upon and use the street.

Although living in that portion which was being changed, and subjected to considerable inconvenience by the impairment of the opportunity of free access to other streets, or of passing to and

from her house, the plaintiff enjoyed no larger rights than other travellers. If legally closed to them it was closed to her. Thereafter as a traveller she took the risk of any injury received. *Jones* v. *Collins, ubi supra.*

But there was evidence introduced by her that after the road-bed had been wrought preparatory to finishing it to a surface grade, and before the accident, the barrier had been entirely removed, while ordinary travel had been resumed.

If such removal or discontinuance had taken place, the signs went with it, and except the condition of its surface, and the general character of the work, both of which were open to common observation, there would be no warning that the way was unsafe.

Upon this evidence the jury could find by the length of time it apparently had been left unobstructed, that without any formal declaration by the mayor, or other municipal authorities, of its reopening, their assent to the resumption of travel might be presumed. *Drury* v. *Worcester*, 21 Pick. 44. *Jones* v. *Collins, ubi supra.*

Undoubtedly the defendant's evidence tended to prove, not only that there had been no removal, but the condition of the surface of the street itself indicated that it was not open to the public.

In such a conflict of testimony these issues of fact were for the jury to determine under proper instructions.

If the fact of removal was found, it became the defendant's duty in the exercise of reasonable diligence to take such precautions as were called for to guard or warn travellers of the danger arising from the open trench into which the plaintiff fell. *Blessington* v. *Boston, ubi supra. Hyde* v. *Boston*, 186 Mass. 115.

This trench had been dug for the purpose of lowering a water main that formed a part of the water system of the defendant, and if left unguarded it could have been found to have made the street defective and unsafe. *Hyde* v. *Boston, ubi supra.*

It does not become necessary to decide whether the engineer of the railroad company, who exercised a general supervision over the whole work, in changing the water main acted as the agent of the city by whose knowledge it would be bound, or for whose negligence it would be responsible, as there was plenary evidence

of notice to the defendant of the defect. The mayor of the city, as well as the city council, must be deemed to have known that the street would be rendered dangerous for travel through the very changes to make which permission had been given under their sanction to close it. *Donaldson* v. *Boston*, 16 Gray, 508, 511. *Prentiss* v. *Boston*, 112 Mass. 43, 48. *Olson* v. *Worcester*, 142 Mass. 536.

Furthermore this particular change was being made apparently with the knowledge and consent of the defendant's officers in charge of its water department. *Donaldson* v. *Boston, ubi supra. Fox* v. *Chelsea*, 171 Mass. 297.

There also was evidence for the consideration of the jury of the due care of the plaintiff.

The execution of the plan had extended through quite a period of time, and though the plaintiff admitted that she knew that the street was being lowered to pass under the track of the railroad, she also testified that this had been accomplished some time before the accident, and "it was finished for people to walk on it."

If there were no lights, or guards, to warn or protect her as a traveller while lawfully using it from falling into the trench, the absence of these usual safeguards well might be considered in passing upon her conduct.

How far knowledge on her part of its structural condition, and that the change then under way was a part of a larger enterprise, not fully completed, but of which she had heard, should be held to show negligence in exposing herself on a dark night to the danger of travelling over a street that according to her evidence was unlighted, and not completely finished, were likewise questions of fact. For it must be taken as settled, that knowledge of a traveller that a defect exists in a public way over which he is rightfully passing, is generally not sufficient as matter of law to bar his recovery, for an injury thereby sustained. *Weare* v. *Fitchburg*, 110 Mass. 334. *Kelly* v. *Blackstone*, 147 Mass. 448. *Norwood* v. *Somerville*, 159 Mass. 105. *Flynn* v. *Watertown*, 173 Mass. 108.

The facts in the case of *Compton* v. *Revere*, 179 Mass. 413, on which the defendant relies, differ so widely from those of the present case as relied upon by the plaintiff, that it is not an

authority against her right of recovery, nor does it require further comment.

It follows that the rulings requested were refused properly, and the instructions under which the case was submitted to the jury were full and accurate.

The exception to the refusal to grant the defendant's motion for a new trial presents no question of law, and does not call for any discussion. *Fox* v. *Chelsea, ubi supra.*

*Exceptions overruled.*