GRACE MACFARLANE, administratrix, *vs.* BOSTON ELEVATED
RAILWAY COMPANY.

SAME *vs.* CITY OF CAMBRIDGE.

Middlesex.    November 22, 1906. — February 27, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Way.    Street Railway.    Negligence.    Bicycle.*

A city engaged in repairing one of its streets and a street railway company which is obliged by law to repair the portions of such street between its tracks perform their respective duties toward travellers on the highway if they give them proper warning to enable them to avoid the danger occasioned by the work, and this may be done by putting up signs and barriers indicating the portion of the street withdrawn from public travel by reason of the repairs being made upon it which render it for the time unfit for use.

In actions under R. L. c. 51, §§ 17, 18, respectively against a city and a street railway company, obliged by law to repair the portions of highways between its tracks, for injuries to and the death of the plaintiff's intestate caused by an alleged defect in a highway in the space between the rails of the track of the railway company, it appeared that one of the parallel tracks of the railway and the side of the street adjoining that track were undisturbed and open for travel, while the other track was being paved with brick between the rails and the side of the street adjoining it was dug up and in process of paving by the city, that the space between the two tracks was in part dug up and was unfit for travel, that the track which was being paved had been raised a foot above the level of the street on each side, and that the paving between the rails had been completed except for three openings, each a few feet in length and filled with sand, the pavement of the track also being covered with a thin layer of sand, that at each end of the work a red flag had been set between the two tracks and there were wooden horses extending from the relaid track across the part of the street where the work was going on, indicating that this part of the street was closed for travel, but the track itself was not barred, as the rails were in place and cars were passing over them, that the plaintiff's intestate was riding on a bicycle upon the unfinished pavement of the relaid track and coming to one of the holes filled with sand was thrown upon the other track in front of an approaching car and was killed.   *Held*, that there was no evidence of negligence or of failure of duty on the part of either of the defendants, they having given sufficient notice that the part of the way undergoing repairs, including the relaid track, was dangerous and was withdrawn from public travel; and *semble*, that the plaintiff's intestate in disregarding this notice and going forward on the unfinished pavement of the track without taking precautions to ensure his safety was not in the exercise of due care.

A city or town, or a person obliged by law to repair a highway, owes the same kind of duty to travellers on bicycles as to those travelling in other ways, but a person riding on a bicycle has no right to disregard a notice that a part of a street is not open to public travel by reason of repairs being made upon it merely because he can ride with his bicycle in a place where ordinary vehicles cannot go.

Two actions of tort under R. L. c. 51, §§ 17, 18, R. L. c. 111, § 267, and R. L. c. 171, § 2, by the administratrix of the estate of Robert H. MacFarlane respectively against the Boston Elevated Railway Company and the city of Cambridge, for personal injuries to and the death of the plaintiff's intestate, and for injuries to his property caused by being thrown from a bicycle while riding on Massachusetts Avenue in Cambridge at a point opposite its intersection with Windsor Street, on August 16, 1904. Writs dated November 16, 1904.

In the Superior Court the cases were tried together before *Hardy*, J., who at the close of the plaintiff's evidence ordered verdicts for the defendants. The plaintiff alleged exceptions.

*S. D. Elmore*, for the plaintiff.

*H. Bancroft*, (*W. Shuebruk* with him,) for the Boston Elevated Railway Company.

*G. A. A. Pevey*, for the city of Cambridge.

Knowlton, C. J. The plaintiff's intestate, while riding on a bicycle on one of the tracks of the defendant railway company, came upon a place filled with sand, where work which was then being done was unfinished, and he was thrown upon the other track in front of an approaching car and killed. The two defendants were engaged in reconstructing and repaving the street, the city doing that part of the work outside of the tracks of the street railway, and the railway company that part within its tracks. The street had settled, and at the place of the accident one of the tracks had been raised about a foot above the level of the street on each side. The work on the northerly side, in charge of the city, was then going on, the northerly track had been raised, and paved except for three openings, each of a few feet in length, which had been left for the construction of a cross-over from one track to the other, and the paving of the track had been covered with a thin layer of sand, and the openings in it had been filled with sand nearly to the level of the adjacent paving. In each case the principal questions are whether there was evidence to warrant the jury in finding negligence on the part of the defendants' servants and due care on the part of the plaintiff's intestate.

In the declaration against the railway company there were different counts, but in each case there was a count under the

R. L. c. 51, §§ 17, 18, which impose upon a railway company, doing the work between its tracks under a permit from the city, the same liability for the condition of the surface there that the city is under in reference to its condition in other places.

The southerly track and the street on the southerly side of it remained undisturbed and were open for travel.  The northerly side of the street was dug up for repairs, and was obstructed by material so that much of the way it was impassable.  Part of the pavement between the two tracks was dug up, and that part of the street was unfit for travel.  According to the undisputed testimony there were wooden horses extending from the track across the northerly part of the street indicating that this part of the street was closed to travel.  There was testimony that the horses bore the usual sign, "No passing through," or "Street closed for repairs," but this was contradicted.  At either end of the work between the tracks a red flag was set, showing that this part of the street was not open for use.  Between the rails of the northerly track there was no sign or obstruction, as the rails were in position, and the cars were passing over them.  But the horses, coming up to the rails on the northerly side, and the red flag between the tracks, gave reasonable notice to travellers that the street was being repaired and was withdrawn from public use from the southerly track to the outer line of travel on the northerly side.  This included the northerly track of the railway, on which fresh sand showed that work had lately been done there.  It had been raised, so that at the place of the accident it was about a foot above the surface on each side of it.

There is no doubt that the defendants were engaged in making proper repairs, and there is no ground for a contention that the work was not being done properly.  What was the duty of the respective defendants in regard to the work done by each, so far as it might affect the safety of travellers on the highway?  It was to give them proper warning, such as would enable them to avoid the danger.  If they put up signs and barriers which showed that one side of the street was withdrawn from public travel by reason of the repairs being made upon it, which rendered it for the time unfit for use, they performed their duty.  On receiving notice of this kind, it was the duty of a traveller

to use only that part of the way which was left open for use. Such a notice was equivalent to a statement that the way was dangerous, was not to be used, and that the defendants would not be responsible for any accident that might happen from the use of it.   One who should pass over it, after receiving such a notice, would be bound to know that he was travelling at his own risk, and that the city and the railway company owed him no duty to make further provision for his safety.

In the present case the defendants could have done nothing more, unless they provided a watchman who should attempt, by active measures, to keep persons out of danger who voluntarily had disregarded sufficient warnings given by signs and barriers.

None but persons on bicycles could have reached this place of danger without great inconvenience.   Persons driving in ordinary vehicles would be precluded by the fact that the track was a foot above the surface on either side, and that the pavement was dug up on both sides of these rails.   Travellers on foot would go upon the sidewalk.   While a person on a bicycle might think that he could get through upon the track, and while the defendants owed the same kind of duty to travellers on bicycles as to those travelling in other ways, one riding on a bicycle could not disregard the notice that this part of the street was not open for public travel, by reason of repairs.   He was bound to know that this notice left the defendants with no further duties in regard to the defective condition of the street, and if he undertook to go forward without taking precautions for himself that would ensure his safety, he was not in the exercise of due care.

We are of opinion that there was no evidence of negligence on the part of either of the defendants.   *Jones* v. *Collins*, 177 Mass. 444.   *Compton* v. *Revere*, 179 Mass. 413.   *Butman* v. *Newton*, 179 Mass. 1, 9.   *Torphy* v. *Fall River*, 188 Mass. 310. *McMahon* v. *Boston*, 190 Mass. 388.   See also *Hyde* v. *Boston*, 186 Mass. 115, and cases cited ; *Harvey* v. *Malden*, 188 Mass. 133.

*Exceptions overruled.*