FREDERICK W. COLES *vs.* BOSTON AND MAINE RAILROAD.
SAME *vs.* T. STUART AND SON COMPANY.

Middlesex. January 21, 1916. — March 8, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Negligence,* Of railroad corporation in abolition of grade crossing, Of contractor, Invited person. *Railroad. Practice, Civil,* Rulings and instructions.

Where a railroad corporation in obeying a decree for abolishing a grade crossing is engaged in changing the grade of a private street and has employed a contractor for the purpose, and where the roadway of the private street still is barred by barriers but the sidewalk on one side of the street is open for the use of the abutters and of all persons having business with them, and where the engineer of the railroad corporation, for the purpose of marking the line of a fence, unnecessarily and negligently has driven a stake two inches square into the beaten path of the sidewalk used by such abutters, the top of which stake projects three or four inches above the sidewalk, and where for one day or for three days the railroad corporation and the contractor have left the stake thus protruding from the beaten path without guarding it or marking it at night by any barrier or light, and where a milkman, one of whose customers is an abutter on the sidewalk, after having left his team and gone on foot to the house of such customer and having delivered some milk there, at three o'clock in the morning is returning to his team and stumbles over the projecting stake, of which he has no knowledge or notice, in actions brought by him respectively against the railroad corporation and the contractor, the jury can find that the plaintiff was in the exercise of due care and that each of the defendants was negligent, and also can find the amount of the plaintiff's damages, and on such findings it is right for the presiding judge to order a verdict for the plaintiff against each of the defendants in the sum found by the jury.

In the foregoing case it appeared that, by the contract for doing the work of changing the grade of the private street, the time, manner and place of working were to be under the charge of the railroad corporation which had control and direction of the work for the purpose of complying with the decree of court addressed to it, and it was *held*, that this made the railroad corporation responsible to the travelling public for negligence on the part of the contractor.

A railroad corporation in making a change of grade ordered by a decree of court in proceedings for the abolition of a grade crossing is not protected from liability for an injury caused by its doing the work negligently on the ground that it was engaged in the performance of a public work, the abolition of such a crossing being largely for its own benefit.

A milkman who leaves his wagon and goes on foot to deliver milk at the house of a customer that abuts on a sidewalk of a private street which is open to the use of abutters, although the adjoining roadway is closed to travel, is using the sidewalk by invitation, not only when he is delivering the milk, but also after he has left it and when he is walking along the sidewalk on his way back to his wagon.

One who would be liable for an injury caused by his negligently driving a stake in the sidewalk of a private street and leaving it there at night projecting above the surface unguarded and unlighted, also would be liable for negligently driving and leaving in like manner a stake projecting in the travelled path at a point where a former fence stood on the land of an abutter adjoining the sidewalk if the presence of the stake made travelling on the sidewalk dangerous.

A judge properly may refuse to make a ruling which states correctly a principle of law if the condition of the case does not require the application of the principle.

An exception will not be sustained to the refusal of a presiding judge to make a ruling which he covered fully in substance in the instructions given.

Two ACTIONS OF TORT by the same plaintiff, the first against the Boston and Maine Railroad and the second against the T. Stuart and Son Company, a corporation engaged in business as a contractor, for personal injuries sustained on May 6, 1913, at about three o'clock in the morning on a private way in Somerville called Village Street, by reason of the plaintiff striking his foot against a stake protruding above the sidewalk of that private way that had been placed there negligently by the defendants and negligently left there unguarded and unlighted.   Writs dated November 12, 1913.

The declarations, except in the name of the defendant, were the same in the two actions.   The nature of the allegations in the five counts of each of the declarations is indicated sufficiently in the fifteenth paragraph of the opinion.

In the Superior Court the cases were tried together before *Brown*, J.   The evidence is described in the opinion.   At the close of the evidence each of the defendants asked the judge to make various rulings, among which were the following:

"13. The plaintiff had no greater rights against the defendant than he would have against the owner of the land where his accident happened if the stake in question had been placed or allowed to remain where it was by such owner under the same circumstances as it was placed by the engineer of the defendant Boston and Maine Railroad or allowed to remain where it was by the defendant T. Stuart and Son Company.

"14. Village Street being a private way, all persons using it without the express or implied invitation of one or more of the abutting owners were mere licensees as to whom the defendant would owe no duty except not intentionally or recklessly to expose them to injury.

"15. If the jury believe that the plaintiff came upon Village Street to leave milk at the house of Mrs. McDonough, one of the abutting owners, and then, having left the milk there, for his own purposes and to suit his own convenience used Village Street as one of the public, he thereupon became a licensee in his use of Village Street and was obliged to take the street as it was."

"18. If the jury believe that the work of reconstructing Village Street was still under way at the time of the accident and that the defendant T. Stuart and Son Company had not then completed the work of preparing the sidewalk for the use of travellers, the defendant railroad owed the plaintiff no duty to make that sidewalk or that part of the street where the sidewalk later was constructed any better or safer than it was.

"19. Village Street being a private way, no further act than posting a barricade or sign with the words 'Street closed: No passing' was necessary to close the street.

"20. Since Village Street was a private way, if the jury believe that the defendant T. Stuart and Son Company had posted a sign 'Street closed: No passing' in a conspicuous place upon the street, any one then using Village Street used it at his peril.

"21. If the plaintiff, because of his daily acquaintance with Village Street, knew that the work of reconstructing the street was in progress and knew that the conditions in the street were constantly changing as the work progressed, that knowledge on his part called for the exercise by him of greater vigilance for his own safety.

"22. If the plaintiff knew or in the exercise of reasonable care ought to have known the conditions as they existed in the street, he went upon the street at his peril.

"23. If, at the time of his accident, Village Street was not graded nor fitted for public travel, the plaintiff went upon it at his peril.

"24. If, in the use of Village Street, travellers thereon were (so far as the abutting owners were concerned) licensees or trespassers, such travellers were licensees or trespassers so far as the defendant was concerned.

"25. If the jury believe that the most direct way for the plaintiff to have gone to his team on the morning of the accident was by way of Dane Street and that, instead of retracing his way on Village Street to Dane Street, the plaintiff after leaving the milk at Mrs. McDonough's for purposes of his own as one of the public used Village Street, he thereby became a licensee who had to take Village Street as it was.

"26. The abutting owner of 13 Village Street had a legal right to place and to maintain a stake like the one in question on his property line and such owner would owe no duty to any one using Village Street as regards such a stake.

"27. The defendant would owe the plaintiff no greater duty as to such a stake than the abutting owner.

"28. If the jury believe that the sign 'Street closed: No passing' was a sufficient notice to close the way, Village Street, then the plaintiff in using Village Street had to use it at his peril."

The judge refused to make any of these rulings. His charge to the jury contained the following portions to which the defendants excepted:

"Now this stake, on the evidence, apparently was driven on what was supposed to be the old fence line. Whether that is the true property line or not in my opinion in this case makes very little difference. Of course if this plaintiff was in on private property where he was not invited to be, where he had no business to be, nobody owed him any duty except not to wilfully injure him. If this stake was not in the highway, in the private way, any part of it, was a foot or two over and he got hurt over there, nobody then owed him any duty except as I shall show you later."

"Now I said in my opinion it made very little difference whether this stake was on the true property line or very near it, and by that I mean this: that if this defendant had allowed that work to go on in such a way that a well defined beaten path had been made on what was to be the sidewalk when they got through, and that reached over the property line an inch or two or these stakes were driven so near to that, whether it is in the highway or not I do not think it would make much difference if they put something there that was in the nature of a trap. Now whether they allowed that thing to go on or whether it did go on is a question of fact for you to determine. If there was a well defined path where this sidewalk now is and a stake was driven in that, then that is a circumstance you can consider because these defendants ought to have realized that somebody in the night time would come along."

In each case the judge submitted to the jury four special questions, which with the answers of the jury to them were as follows:

"1. Was the plaintiff in the exercise of due care?" The jury answered "Yes."

"2. What were the approximate cause or causes of the plaintiff's accident?" The jury answered, "He stumbled over protruding stake in beaten path."

"3. Was the defendant Boston and Maine Railroad [T. Stuart and Son Company] negligent? If you answer yes, state what that negligence was." The jury answered, "The unprotected condition of protruding stake."

"4. What are the plaintiff's damages?" The jury answered, "$9,000."

Thereupon in each of the cases the judge ordered a verdict for the plaintiff in the sum of $9,000; and both defendants alleged exceptions.

*A. D. Hill*, (*P. E. Costello* with him,) for the plaintiff.

*F. N. Wier*, (*J. M. O'Donoghue* with him,) for the Boston and Maine Railroad.

*E. C. Stone*, for T. Stuart and Son Company.

CARROLL, J. The plaintiff was injured about three o'clock in the morning of May 6, 1913, by falling over a stake about two inches square, which projected three or four inches above the sidewalk on Village Street, a private way running from Dane to Vine streets in the city of Somerville. Under a decree of the Superior

Court the first named defendant, hereinafter called the railroad, was ordered to abolish a grade crossing. St. 1906, c. 463, Part I, §§ 29, 45. In this work it was necessary to change the grade of Village Street. It contracted with the last named defendant, hereinafter called the contractor, to do the work and furnish the material. The work was begun in July, 1912, and was finished July 26, 1913.

The plaintiff was a milkman. One of his customers, Mrs. McDonough, lived on the north side of Village Street. The morning he was injured he left his team on Dane Street, went down the northerly side of the street to Mrs. McDonough's, delivered the milk, thence walked on Village Street toward Vine Street, in which vicinity his driver was to meet him. The accident happened between the McDonough house and Vine Street. The changing of the grade of Village Street began the summer before the accident, and there was some evidence that this work was practically completed in the autumn following, with the exception of the macadam surface. While the roadway was blocked by wooden horses, the work being still in progress, the sidewalk was open and was used by the residents of the street and those having business with them and to some extent by the public. The fence on the land between the street and the land abutting was removed at the beginning of the work because of the change of grade, and was not replaced at the time of the accident. There was then nothing to mark the line between the sidewalk and the adjoining property. The sidewalk in this condition was open for travel and in use during the progress of the work. The stake on which the plaintiff tripped was one of a row with intervals of fifty feet, driven by the engineer of the railroad from one to three days before the plaintiff was injured. The jury might find that the stakes were there for the purpose of locating the fence line along the northerly side of Village Street. There was evidence that the fence, when erected, was placed nearer the abutting line, by several inches, than the line indicated by the stakes. These stakes were unprotected by any light or barrier. The evidence of an assistant surveyor, formerly in the employ of the railroad, tended to show that there was no reason for such a stake as the one in question projecting above the ground merely to indicate a fence line. In answer to specific questions, the jury found that the plaintiff was

in the exercise of due care; that he stumbled over a protruding stake in the beaten path; that the defendant's negligence in each action consisted in the unprotected condition of the protruding stake, and assessed the damages at $9,000. The judge thereupon ordered a verdict for the plaintiff in each case.

1. The residents on the northerly side of Village Street were obliged to use the sidewalk in order to reach their homes. Those having business with them, who used the way by their express or implied invitation, were rightfully there, and could recover for the negligence of a wrongdoer. *Fitzsimmons* v. *Hale*, 220 Mass. 461. *Curtis* v. *Kiley*, 153 Mass. 123.

The plaintiff passed over this same sidewalk for several months before he was injured, and during that time the walk was in fair condition, one witness saying a small roller had been run over it. The plaintiff did not see the stake and had no knowledge of it; in fact, the jury could find he knew of no change in the sidewalk since the November preceding. He did know that the changing of the grade was in progress, not yet completed, but he also knew that the sidewalk was open for travel, was in daily use, and all that remained was to lay a macadam surface. Considering the time of night, that he was travelling on what was supposed to be a "fair gravel sidewalk, the travelled part being practically about five feet, . . . quite smooth from walking on it," with no light to show him the danger and with no knowledge of it, his care, under all the circumstances, was for the jury. *Winship* v. *Boston*, 201 Mass. 273. The case at bar is to be distinguished from *Compton* v. *Revere*, 179 Mass. 413. In that case the street was not open for travel. It was in a very rough condition, the dirt had not been levelled off and it "lay as it had been dumped from the tip-carts" the December before and was absolutely unfit for public travel. It was plain, as the court said, "that the plaintiff knew all that there was to know about the condition of things."

The contract providing that the time, manner and place of executing the work, were to be under the charge of the railroad company, being done under a decree issued to it, the railroad, having control and direction of the work, was responsible to the travelling public for the neglect of the contractor. *Linnehan* v. *Rollins*, 137 Mass. 123. *Ainsworth* v. *Lakin*, 180 Mass. 397, 400. *Wood-*

*man* v. *Metropolitan Railroad,* 149 Mass. 335. *Curtis* v. *Kiley, supra.*

If the stake unnecessarily projected above the sidewalk, or was negligently placed in the line of travel, outside of the true fence line, or was so placed that people lawfully travelling on the sidewalk would have no notice of it, and it was not protected in some way, with no lights to direct the traveller, the jury could find the railroad was negligent. The stakes were placed on Village Street, according to some witnesses, three days before the accident, according to another witness, one day before. There was a lamp at Dane Street, but it did not cast a light on the place where the plaintiff fell. Lanterns had been placed at various points, but they were not burning. There was no light near the stake over which the plaintiff fell. At Dane Street there were no lanterns, and at Vine Street they were not lighted. While there were barriers around certain parts of the work in the roadway, there were none on the sidewalk. There was, therefore, sufficient evidence, in our opinion, to make the question of the negligence of each defendant a question for the jury.

The defendants contended that, being engaged in the execution of a public work under the statute and the decree of the court, the railroad, while so acting, cannot be held liable for the negligence of its servants. *Hill* v. *Boston,* 122 Mass. 344. Even if a corporation operating a railroad for profit can be said to be engaged in the performance of a public service and not in a commercial enterprise while carrying on the work of abolishing a grade crossing, as in the case at bar, the result of the undertaking is so clearly for the advantage of the railroad corporation in the safety of its patrons and the speed and frequency of its trains, that although the public generally are benefited in their security and convenience thereby, the railroad is not excused from responsibility for its own negligence. *Hill* v. *Boston,* 122 Mass. 344. *Dickinson* v. *Boston,* 188 Mass. 595. *Norwood* v. *New York & New England Railroad,* 161 Mass. 259. *New England Telephone & Telegraph Co.* v. *Boston Terminal Co.* 182 Mass. 397. *Hurley* v. *Boston,* 202 Mass. 68. *Torphy* v. *Fall River,* 188 Mass. 310. *Oliver* v. *Worcester,* 102 Mass. 489.

2. It is true that Village Street was not a public way, and there was no public easement to be withdrawn by vote of the municipal

authorities; still we cannot rule as matter of law that the defendants performed their full duty. As we have said, the plaintiff knew, in a general way, that the repairs were going on in the street, but he had no notice or warning that stakes had been driven into the sidewalk, so as to make it dangerous. The jury might have found under these circumstances, especially when the sidewalk was in constant use, that the defendants should have done something more to protect the plaintiff and prevent injury to persons lawfully on the street. *Stoliker* v. *Boston,* 204 Mass. 522, at pages 533, 538. *Torphy* v. *Fall River, supra.* *Hurley* v. *Boston, supra.*

3. The fifteenth and twenty-fifth requests of the railroad were properly refused. The plaintiff was invited, at least impliedly, to enter the premises of his customers and to use the street in so doing. While departing from the premises he was still protected by the invitation; nor did he become a licensee because instead of retracing his steps he went toward Vine Street, for there was evidence that when the bridge was closed it was necessary for him to go through Village Street to the Vine Street end and "rejoin his team by crossing over the fields." *Weldon* v. *Prescott,* 187 Mass. 415, is not in point. There the plaintiff entered the private way as one of the public as a licensee and was such when he was injured.

4. One of the defendants' contentions was that the plaintiff was not on Village Street when injured; that he was then travelling on private land adjoining Village Street, the stake being on the line of the old fence. There was evidence that the line of the stakes, over one of which the plaintiff fell, was in the travelled path, within what was known as Village Street and outside of the old fence line. Even if the stakes were on the line of the old fence, and their presence made travelling on the sidewalk dangerous, the defendants could be found to have been negligent. *McIntire* v. *Roberts,* 149 Mass. 450, 452. *Cavanagh* v. *Block,* 192 Mass. 63. *Mellen* v. *Morrill,* 126 Mass. 545. We see no error in the refusal of the judge to give the requests nor in the instructions given on this branch of the case.

5. We do not think the judge was obliged to give the thirteenth, twenty-fourth and twenty-sixth rulings of the defendants. "The judge is not required to state principles of law, even if correct

and asked to do so by counsel, unless the condition of the case requires it." *Howes* v. *Grush*, 131 Mass. 207, 211.

6. The fourteenth request was properly refused, it being undisputed that the plaintiff was a milkman, delivering milk to one of the abuttors. He was not, therefore, a mere licensee. *Cavanagh* v. *Block, supra.*

7. The sixteenth and seventeenth requests were given in substance. The jury were told that the plaintiff could not recover, if on private property where he had no right to be and where he was not invited.

8. We think the judge properly instructed the jury on the rights of the parties, and the eighteenth request was properly refused. The plaintiff does not complain of the fact that the street was undergoing repairs or that stakes were used. He says, the defendants were negligent in the way they used the stakes, in failing to protect them by barriers, lights or guards or warning him of the danger.

9. The nineteenth and twentieth requests were properly refused. The defendants neither intended not attempted to keep the sidewalk closed. The purpose of the barrier was to keep the roadway closed, and the jury could find the sidewalk was open for travel. In addition to this, there was some evidence that no "horses" were used at the Dane Street entrance. *Torphy* v. *Fall River, supra.*

10. The twenty-first, twenty-second and twenty-third requests were properly refused. The judge fully instructed the jury on the question of the plaintiff's care. The defendants were not harmed by the failure to give these requests as asked.

11. Requests twenty-five and twenty-seven have already been discussed, but the jury found in answer to a question that the stake was in the beaten path, and in view of this finding the requests are now immaterial.

12. We think there was no error in refusing the twenty-eighth request.

13. The exception to the judge's charge must be overruled. We have already discussed the question of the fence line and the position of the stakes. The finding of the jury renders any error, if there was such in the charge, immaterial.

14. The testimony of Harmon, which was admitted subject to

the defendants' exception, was afterwards stricken out. The evidence of Fitzpatrick was admissible. It was offered for the purpose of identifying the place and the changes which occurred between the date of the accident and the nineteenth day of May.

15. The contractor argues that the plaintiff was not entitled to recover on the first or second count of his declaration. We think these counts, fairly construed, mean that the stake was driven into the sidewalk and allowed to remain there by reason of the negligence of the defendants, and there was evidence to sustain them. We also think the plaintiff was entitled to go to the jury on the third, fourth and fifth counts. Even if the stake were driven by an employee of the railroad, this does not excuse the contractor. In the contract it assumed all responsibility for injury.

After certain questions were answered, the judge ordered a verdict for the plaintiff. The contractor argues this was error, because the jury did not make a specific finding that it was negligent.

The second question submitted to the jury was, "What was the proximate cause or causes of the plaintiff's accident?" To which the jury answered, "He stumbled over protruding stake in beaten path."

The third question, "Was the defendant T. Stuart and Son Company negligent? If you answer 'Yes,' state what that negligence was." To this question the jury answered, "Unprotected condition of protruding stake." The contractor says there is no answer "Yes" to the question. The jury, in the finding that the protruding stake was unprotected, assumed and found the contractor was negligent. They could not have found what the negligence was, as they did specifically, unless the contractor's negligence was involved.

It follows that the defendants' exceptions must be overruled in each case.

*Exceptions overruled.*