NELLIE CONNORS *vs.* WORCESTER CONSOLIDATED STREET RAILWAY COMPANY.

Worcester. October 2, 1917. — October 23, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, & PIERCE, JJ.

*Negligence,* Street railway.

In an action against a street railway corporation for personal injuries caused by stumbling over paving blocks in a city street where the defendant was relaying its tracks, a count of the declaration alleged that the defendant negligently suffered its track to be obstructed with paving blocks. It appeared that the defendant in relaying its tracks laid the rails, put in the ties and a cement foundation for the paving blocks, but that the city laid the pavement, consisting of granite blocks covered with a coat of "grouting," and that, while the work was going on, the "city protected that work by putting paving blocks on the side or whatever barriers they desired." The plaintiff testified that she tripped and fell over paving blocks. *Held,* that, the use or scattering of paving blocks over which the plaintiff testified that she tripped and fell being wholly under the supervision and control of the city, the defendant was not liable.

A motorman operating a street railway car, in passing through a city street that obviously is "broken up" in the process of repaving while the tracks of the street railway are being relaid, is not bound to anticipate that a traveller on foot will pass round a barrier of paving blocks and, stumbling and falling over scattered paving blocks placed there by the city, will be precipitated upon the track in front of the car or will come in contact with the car in falling.

TORT for personal injuries sustained on August 19, 1915, at about half past six o'clock in the morning while crossing Main Street in Worcester, where the tracks and roadbed of the defendant were in process of repair. Writ dated August 21, 1915.

In the Superior Court the case was tried before *O'Connell,* J. The evidence is described in the opinion. A foreman of the street department of the city of Worcester, who had charge of the "grouting," testified that "this grouting consisted in mixing sand and cement and pouring it into block pavings." At the

close of the evidence the judge ruled that the plaintiff could not recover and ordered a verdict for the defendant. At the request of the parties he reported the case for determination by this court, with a stipulation that, if his ruling and the ordering of the verdict were wrong, judgment was to be entered for the plaintiff in the sum of $600; otherwise, judgment was to be entered for the defendant.

*E. A. Ryan,* for the plaintiff.

*C. C. Milton,* for the defendant.

BRALEY, J. The plaintiff in describing her conduct and the cause of her injuries said, "I came from Walnut Street going to work and turned to the right to the other corner of the cross walk and started to cross over Main Street. I looked both ways and I saw a car coming north from City Hall and that was about at Barnard's. The streets were broken up and I saw no car going south from Lincoln Square. I picked my way along. The first thing I saw, the car was on to me when I saw it and I tried to step back and the street was in such a condition that I tripped. I do not know whether I went forward or backward. The pavement and things were behind my heels. . . . Before starting to cross Main Street, I looked down and up toward the north. I saw a car coming from City Hall going north but I did not see any car coming from Lincoln Square going south. Then I started to cross and I gave the other car, going north, a chance to get by the track that I was to cross and I got almost to the car track when I saw the other car, the one going south. It was almost on me and I stepped back and something tripped me—stones or something tripped me. . . . I noticed that the street was broken up. There was quite a high pile of stone back of me, and there was a space (indicating) about so big, not filled in with them. I picked my way the best I could round the paving blocks and this required my attention, to see where I was going. . . . Before I came to the paving blocks while crossing, I looked to the north to see if any car was coming going south, and again I looked toward Lincoln Square to see if there was any car going south. I did not see any car or hear any car going south. I might have looked twice, but I did not see a car going south until it was a little ways from me and I tried to get out of the way, and I would say the car was about four feet from me, but before this I was picking

my way along.   When I first realized the car I tried to step back, to get out of the way of it, and as I say, I tripped on the paving and I do not remember whether I fell backward or forward afterwards.   Then the car hit me, threw me down. . . . I was thrown down on the paving blocks, and I account for the injury to my head, one side as I thought was probably hit by the car and the other side, of course, I fell on and I think my head probably struck. . . . The granite blocks appeared to be laid along the side as though they had been working and were piled and put there to be used later on to finish that place.   Where I was crossing, in some parts the paving blocks had been put in and others were put there, I suppose, to finish it sometime."

The declaration, which is in two counts, alleges in the first count, that the plaintiff was injured by being struck by a car operated by the defendant's agents or servants "and thrown heavily to the ground," and in the second count, that being required to keep its track in a reasonably safe condition for the use of travellers the defendant negligently suffered the track "to be obstructed with paving blocks and made dangerous by excavations without proper guards and protections to travellers."   The question therefore is, whether there was any evidence which would have warranted the jury in finding that the defendant failed to use ordinary care in the discharge of its duty to the plaintiff as a traveller.   See also *Dwyer* v. *Boston Elevated Railway,* 220 Mass. 193; *Torphy* v. *Fall River,* 188 Mass. 310, 314; *Hyde* v. *Boston Elevated Railway,* 186 Mass. 115.

The second count is based on R. L. c. 112, § 44.   ". . . A street railway company shall be liable for any loss or injury which may be sustained by any person in the management and use of its tracks and during the construction, alteration, extension, repair or renewal of its railway, or while replacing the surface of any street which may have been disturbed as aforesaid, and which results from the carelessness, neglect or misconduct of its agents or servants who are engaged in the prosecution of such work, if notice of such loss or injury is given to the company and an action therefor is commenced in the manner provided by section twenty of chapter fifty-one. . . ."

If it be assumed that under R. L. c. 51, § 20, the jury could have found on the record that the notice was not invalid because

there was no intention to mislead and the defendant "was not in fact misled thereby," the evidence wholly fails to show negligence in making the repairs. The company laid the rails, put in the ties and the "original grouting." But the municipality laid the pavement consisting of granite blocks which upon being covered with a coat of "grouting" formed the completed surface of the street. It also appears that, after the surface had been "grouted" and the blocks put in position, the "city protected that work by putting paving blocks on the side or whatever barriers they desired." The plaintiff was required to offer evidence from which it could be found that the accident was caused by the company's negligence; but the placing, use or scattering of the paving blocks or stones over which she tripped or fell was wholly under the supervision and control of the city for whose acts if negligent the defendant is not responsible. *Hyde* v. *Boston,* 186 Mass. 115. *Stoliker* v. *Boston,* 204 Mass. 522, 537. It is not argued, nor does the evidence show, that she stepped into the spaces excavated for the "original grouting;" or which after grouting remained open until the blocks were inserted or laid.

If, however, the plaintiff cannot recover on this count, it is further contended, that under the first count there was evidence of the negligence of the defendant's motorman. The accident happened at half past six in the morning of August 19, 1915, and the night watchman employed by the defendant to "put the lanterns out" and "to keep the traffic off the new paving until the grouting was dry" and whose duties ended when "the day gang" started in the morning at eight o'clock, the jury could say, was present in the performance of his duties. While the street technically had not been closed to public travel the repairs were proper, and all the conditions impeding the plaintiff's passage were obvious, and she testified, "I noticed that the street was broken up," and the barrier on the side indicated that at that place the street had been temporarily withdrawn from public travel by reason of the repairs which rendered it unfit for use, and the company in the exercise of reasonable diligence was under no obligation to take further precautions for her safety. *MacFarlane* v. *Boston Elevated Railway,* 194 Mass. 183. The car is not shown to have been running at an unusual or excessive

speed; nor was the plaintiff, when she fell, passing over a cross walk. It is urged, however, that the motorman should have observed her position, and sounded the gong or stopped the car; but no reason appears why he should have anticipated that pedestrians would pass round the barrier of paving blocks, and stumbling and falling over scattered blocks of the city would be precipitated upon the track in front of, or would come in contact with, a passing car. *MacFarlane* v. *Boston Elevated Railway, ubi supra.*

We are of opinion that in accordance with the report, judgment should be entered for the defendant on the verdict.

*So ordered.*