WILLIAM J. BARBER *vs.* C. W. H. MOULTON LADDER COMPANY.

Middlesex.   November 20, 1918. — January 2, 1919.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Way,* Private.  *Negligence,* In maintenance and operation of gate.

In an action for personal injuries sustained when the plaintiff was eleven years of
age by reason of a gate of the defendant falling upon him, there was evidence
that the plaintiff was on a private street, that there were houses on this street,
in one of which the plaintiff's father lived, and other buildings including those
of the defendant, that this street was used for "free traffic" and "foot travel"
in the same manner as "any other street," and that the plaintiff had no other
means of access to his home.  There was no evidence that the defendant had title
to any portion of the land under such way or even to the land abutting on the
way which it occupied for the transaction of business.  *Held,* that on this evi-
dence it could be found that the plaintiff when injured was not a trespasser
nor a mere licensee and that the defendant accordingly was required to take
reasonable precautions in the maintenance and management of its gate not to
injure the plaintiff when he was in this private street in the exercise of due care.

In the case above described it appeared that before the accident happened the
plaintiff in going out from the defendant's yard had climbed over the gate, which
then was held up by a rope, but it appeared by the evidence that the plaintiff's
act in climbing over the gate did not contribute to its subsequent fall when the
rope was unfastened.  It also appeared that the plaintiff, after he was in the
private street, walked back to the defendant's gate and looked through an open-
ing between the side of the gate and a building to see whether his companions
were coming from the yard and then, instead of going directly home, took about
six steps from the gate and stooped down to look under another gate on the
opposite side of the street into a yard to see some dogs, that while he was in this
position the defendant's gate, on which the rope had been unfastened by a serv-
ant of the defendant, fell upon him, causing the injuries.  *Held,* that it could
not have been ruled as matter of law that the plaintiff acted carelessly, and that
the question, whether he was negligent, was for the jury.

In the same case, it appeared that the gate was maintained and used by the de-
fendant in its woodworking business.  There was evidence that an overhead
iron track, on which the gate originally had been hung, had been removed and
that the travelling wheels, except two that were useless, had been removed, that
at the time of the accident the gate rested on a roller of wood placed on the
ground, by the use of which it was opened and closed, that, when it was closed,
the upper part of the gate leaned at one end against a shed and at the other end
was secured and held in an upright position by a rope fastened to an iron hook
in the side of a building or to a steel rail that ran across the passageway, and that
the gate had been tied up in this way by the defendant's yard foreman, when at

some time before the accident he had found the gate lying on the ground and had restored it to this position, that at the time of the accident the defendant's yardman, who was following the plaintiff when he climbed over the gate, was seen "fumbling" with the rope when the gate fell and that after the accident the rope unbroken was found attached to the gate. It could have been found that the yardman, among other duties, had charge of the gate and knew of its dilapidated condition. *Held,* that the jury were warranted in finding that the defendant was negligent in the construction or maintenance of the gate and that the fall of the gate was caused by the negligence of an employee of the defendant acting within the scope of his duty, and accordingly that a motion to order a verdict for the defendant was denied rightly.

Tort for personal injuries sustained on July 30, 1915, when the plaintiff was eleven years of age, by reason of the negligence of the defendant in permitting a gate, which it was its duty to maintain in a safe condition, to be defective and out of repair, and by reason of the negligent management and operation of the gate by a servant of the defendant which caused it to fall upon the plaintiff. Writ dated October 15, 1915.

The defendant's answer, as amended, contained an allegation that the plaintiff was not in the exercise of due care and that the injury alleged to have been sustained by him was caused in whole or in part by his own negligence.

In the Superior Court the case was tried before *Hitchcock,* J. The evidence is described in the opinion. At the close of the evidence the defendant made a motion that a verdict be ordered for it. The judge denied the motion and the defendant excepted. The defendant then asked for certain rulings, but it was stated in the bill of exceptions that "no exception was taken with respect to the court's disposition of the requests for rulings or to the charge."

The judge submitted to the jury three special questions, which with the answers of the jury were as follows:

"1. Was the falling of the gate by which the plaintiff was injured caused by any negligence on the part of the defendant in the construction or maintenance of the gate?" The jury answered, "Yes."

"2. Was the falling of the gate by which the plaintiff was injured caused by any negligence on the part of any servant or employee of the defendant, acting within the scope of his employment?" The jury answered, "Yes."

"3. Was the falling of the gate by which the plaintiff was injured

caused wholly or in part by any act of the plaintiff in climbing over the gate?" The jury answered, "No."

The jury returned a verdict for the plaintiff in the sum of $7,500; and the defendant alleged exceptions.

*H. D. McLellan,* (*C. F. Lovejoy* with him,) for the defendant.

*E. J. Flynn,* (*C. J. Muldoon, Jr.,* with him,) for the plaintiff.

BRALEY, J.   The plaintiff, a lad eleven years of age, was standing in a private way in Somerville known as Earle Street, when the defendant's gate fell upon him, causing serious personal injuries for which the jury have awarded substantial damages.

The first contention is, that there is no evidence which would warrant a finding that at the time of the accident the company owed him any duty of exercising reasonable care for his safety. It appeared and the jury properly could find that while not a "through street," there were houses, in one of which the plaintiff's father lived, and other buildings, including the defendant's, on the street, which was used for "free traffic" and "foot travel" in the same manner as "any other street," and that the plaintiff had no other means of access to his home. The establishment or location of the way whether by grant or prescription, is not shown, and there is no evidence that the defendant had title to any portion of the soil of the way, or even to the land abutting on the way which it occupied for the transaction of business. The plaintiff being neither a trespasser nor a mere licensee, the defendant therefore was required to take reasonable precautions in the maintenance and management of the gate to avoid injury to him when in the street and in the exercise of due care. *Moffatt* v. *Kenny,* 174 Mass. 311. *Coles* v. *Boston & Maine Railroad,* 223 Mass. 408.

While the exceptions recite that, apart from the request to order a verdict for the defendant, no exceptions were taken "with respect to the court's disposition of the requests for rulings or to the charge," the question, whether as matter of law the plaintiff is chargeable with contributory negligence is open. The jury were warranted in finding in answer to the third question, that the falling of the gate was not caused "wholly or in part by any act of the plaintiff in climbing over the gate." It is enough to say that on the evidence the jury could find that, if the gate had been secured as the defendant contended and as described by its general manager, the plaintiff's act in climbing over it in making

his exit from the yard did not contribute to its subsequent fall. The plaintiff's conduct after he was in the street in walking back to the gate where he peered through the opening between the end of the gate and the dry house to ascertain whether his companions were coming from the yard, and his failure to go directly home "because there used to be some dogs in a neighbor's yard, and he stooped down" after taking about six steps from the gate "to look under the neighbor's gate [on the opposite side of the street] to see them," were for the consideration of the jury. It could not have been ruled as matter of law that he acted carelessly. *Dowd* v. *Tighe*, 209 Mass. 464.

The remaining contention is, that there is no evidence of the defendant's negligence with reference to the condition of the premises, "nor was there evidence of any negligence on the part of any of the defendant's employees while acting within the scope of their employment." The jury, however, thought otherwise, and in answer to the first and second questions found the defendant to have been negligent in the construction or maintenance of the gate, and that the fall of the gate was caused by the negligence of its employee while acting within the scope of his duty. It was undisputed that the gate was maintained and frequently used by the defendant in its "woodworking business," and the jury well could find on all the evidence, that the overhead iron track on which the gate originally was hung had been removed, and the travelling wheels, with the exception of two which were useless, had been taken off. Because of these changes the gate rested upon a roller of wood placed on the ground by the use of which it was opened and closed and, when shut at the time of the accident, the upper part at one end leaned against a shed, the other end being secured and held in an upright position by a rope fastened to an iron hook in the side of the dry house, or to a steel rail running across the passageway. It also appeared that before the accident the gate had been found prostrate and that the defendant's yard foreman had restored it in the position above described.

The defendant on the record was required in so far as travellers on the way were concerned to keep the gate on its own premises. How far its stability or structural strength had been impaired by the changes or by the method of its use, was for the jury, as well as the question, whether the defendant so maintained and managed

ᴛthe gate as not to endanger the plaintiff while using the way. *Gorham* v. *Gross*, 125 Mass. 232, 239. *Shepard* v. *Creamer*, 160. Mass. 496. *Smith* v. *Edison Electric Illuminating Co.* 198 Mass. 330. *Smith* v. *Gammino*, 225 Mass. 285:

A further finding was justified that the defendant's yardman, who was following the plaintiff as he climbed over the gate, was seen "fumbling" with the rope when the gate fell, and that after the accident the rope unbroken was found attached to the gate. It would seem to be obvious on the evidence, or at least the jury could so find, that among other duties the yardman had charge of the gate and knew of its dilapidated condition. If with knowledge, or if in the exercise of reasonable care he should have known, of the plaintiff's presence within a few feet of the gate, he unᴛfastened the rope thereby causing its fall, the defendant is responsible for his negligence. *Higgins* v. *Bickford*, 227 Mass. 52, 54, and cases cited.

We are accordingly of opinion that a verdict for the defendant could not have been ordered, and the exceptions should be overruled.

*So ordered.*