MARIO BARKER & another *vs.* FRANK W. WIKSTEN & another.

Plymouth.   April 5, 1955. — April 29, 1955.

Present: QUA, C.J., RONAN, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Real Property*, Equitable restriction.   *Unlawful Interference.*

Restrictions in a land developer's deeds of sundry lots in the development confining the use of such lots to residential purposes and prohibiting the conducting of any business thereon, where there had been recorded an agreement between the developer and a purchaser of three other lots that such purchaser should "have the exclusive business rights in the entire development," were not violated by the sale of milk by an outside dealer to occupants of the residential lots in competition with a general store for the sale of milk and other things conducted on the three lots by the purchaser thereof.

BILL IN EQUITY, filed in the Superior Court on August 18, 1954.

The suit was heard by *Paquet*, J., on a master's report.

*Joseph M. Leahy*, for the plaintiffs.

*Edward M. Dangel*, (*Leo E. Sherry & Percy F. Churbuck* with him,) for the defendants.

RONAN, J. This is an appeal from a final decree dismissing a bill brought by the plaintiffs to enjoin the defendants from selling and delivering milk and other dairy products to householders residing in a certain section of Carver known as Crystal Lake Shores.

It appeared from a master's report, which was confirmed and to which no objections were filed by the parties, that Crystal Lake Shores, Inc., purchased a tract of thirty-nine and one half acres of vacant land in September, 1952, for the purpose of developing the land and selling the lots. On May 11, 1953, it sold three adjoining lots to the plaintiffs upon which they have constructed a building in which they have since conducted a general or variety store for the sale of groceries, milk, dairy products, ice cream, and other articles. The plaintiffs and the land company entered into a written agreement on August 1, 1953, which, having recited that the plaintiffs had purchased three lots on May 11, 1953, and that the seller and buyers have agreed that the grantees (the plaintiffs) are to have the exclusive right to use the lots for business purposes, provided that the grantor will not convey any of the land known as Crystal Lake Shores for any purpose other than residential and that "the grantees [the plaintiffs] shall and will have the exclusive business rights in the entire development of Crystal Lake Shores." This agreement was acknowledged by the land company on November 9, 1953, and recorded on November 12, 1953. Prior to May 11, 1953, the land company had conveyed nineteen lots, and prior to November 12, 1953, sixty lots. All the deeds since August 10, 1953, with one exception contained the following restrictions: (1) "That said premises are to be used for residential purposes only." (2) "That no business of any kind is to be conducted on said premises." (3) "That no advertising signs are to be placed or posted on said premises." There are now some one hundred six cottages in the development which are occupied, except in a few instances, only during the summer months. The plaintiffs operate their store from June to Labor day each year.

The defendants purchase milk from farmers which they sell in various towns, and have been selling milk and eggs to ten or twelve families during the summer season and to anyone who might occupy a cottage throughout the year. The plaintiffs have remonstrated against the defendants selling these articles to those occupying the cottages, and contend that they alone have a right to this business but that the defendants have ignored this claim and continue to deal with persons residing in these cottages.

It is to be noted that the land company is not a party to these proceedings and neither is any customer of the defendants to whom a conveyance was made under the restrictions already mentioned.

The lot owners had the right to use the ways appurtenant to their lots, and the defendants in delivering goods to them could use the ways for this purpose even though the title to the ways was in the land company. It was said in *Baxendale* v. *North Lambeth Liberal & Radical Club, Ltd.* [1902] 2 Ch. 427, 429, that "it cannot be doubted that in the ordinary case of a grant of a right of way to a house and premises which may only be used as a private dwellinghouse, the right [to use the way] would extend not only to the grantee, but to members of his family, servants, visitors, guests, and tradespeople, even though none of these persons be expressly mentioned in the grant." In *Murphy* v. *Avery Chemical Co.* 240 Mass. 150, 152, it was held that one returning from delivering goods to the owner of a factory, whose premises were crossed by a railroad, was upon the railroad crossing at the implied invitation of the factory owner. See also *Cavanagh* v. *Block*, 192 Mass. 63, 64; *Hamilton* v. *Taylor*, 195 Mass. 68, 71; *Barber* v. *C. W. H. Moulton Ladder Co.* 231 Mass. 507, 509; *Sullivan* v. *Saugus*, 305 Mass. 127, 130; *Adams* v. *George Lawley & Son Corp.* 314 Mass. 87, 91.

The restrictions barred the use of the lots for commercial purposes, but the purchase and delivery of milk and eggs for consumption by the occupants of cottages upon the lots was not a use which amounted to conducting a business on

the lots or changed their use from a residential to a commercial one. It was merely incidental to the maintenance of the home. *Carr* v. *Riley*, 198 Mass. 70. *Prest* v. *Ross*, 245 Mass. 342. *Tripp* v. *Fay*, 264 Mass. 516. Compare *Dorr* v. *Harrahan*, 101 Mass. 531.

*Decree affirmed with costs of the appeal.*