KUBIC vs. AUDETTE, MISC 13-480929

































 
 VINCE KUBIC and PAUL KUBIK, Plaintiffs, v. DAVID AUDETTE, Defendant
 MISC 13-480929 
 FEBRUARY 11, 2021
WORCESTER, ss.
ROBERTS, J.
MEMORANDUM OF DECISION AND ORDER ON MOTION FOR CLARIFICATION AND APPLICATION FOR PERMANENT INJUNCTION














 INTRODUCTION 





 This matter is before the court on plaintiffs Vince Kubic's and Paul Kubik's ("the Plaintiffs") Motion For Clarification ("Clarification Motion") and Application For Permanent Injunction ("Application"), having been remanded to this court by the Appeals Court after entry of its decision in Kubic v. Audette, 98 Mass. App. Ct. 289 (2020). In that decision, the Appeals Court concluded (1) that the Plaintiffs, not defendant David Audette ("Defendant"), own the fee in the right of way ("ROW") running between Plaintiffs' lots to the shore of Webster Lake as shown on a plan entitled "Plan of Lots owned by Arthur & Doriza L. Robinson Webster Mass. Scale 1"- 60' Sept 11 1948 J.R. Kleindienst Eng." and recorded in the Worcester County Registry of Deeds at Plan Book 191, Page 16 ("the Plan"); (2) that the ROW, and Plaintiffs' ownership interest therein, extends to the presently existing water line of Webster Lake; and (3) that, while Defendant has an easement to cross the ROW, that easement does not include the right to park thereon or to occupy it, e.g., by holding social events, maintaining a picnic table or storing a dock in the off season thereon. See 98 Mass. App. Ct. at 302-305. The Appeals Court remanded the matter to this court to determine whether Defendant's placement and use of a dock located at the end of the ROW and extending into Webster Lake constitutes an overburdening of the easement. 





 The Appeals Court also suggested that, in view of this court's (Cutler, J.) earlier determination that Defendant could permit his "guests" to cross the ROW to access Webster Lake by foot, the parties might want to consider seeking clarification from this court as to who would qualify as a "guest." Kubic, 98 Mass. App. at n. 16. The Clarification Motion before the court seeks to do just that. The Application seeks the entry of a permanent injunction in conformity with the Appeals Court's decision, enjoining the Defendant and those acting in concert with him from parking within the boundaries of the ROW except for temporary parking to offload people or property at the shore of the lake, from engaging in any activities that amount to occupation of the ROW, and, consistent with the Clarification Motion, limiting the use of the ROW to the individuals and categories of individuals determined to be "guests" by the court. 





 Defendant filed an opposition to Plaintiffs' Clarification Motion and Application. A hearing on both was held by videoconference on February 9, 2021. For the reasons stated on the record at the hearing and set forth herein, the Clarification Motion and the Application are ALLOWED on the terms set forth below. 





CLARIFICATION MOTION 





 In their Clarification Motion, the Plaintiffs request that this court define "guest" or "invitee" as it may be used in any judgment or permanent injunction in this matter as those persons whom Defendant has invited to use the ROW and who use it in the Defendant's presence. The Defendant requests that a "guest" be defined as a person who, by verbal or written communication or by clear and knowing assent on the part of the dominant owner, has been invited, requested, or authorized to utilize the ROW for a purpose not inconsistent with the permissible uses available to the owner of the dominant estate, with or without the Defendant's presence. Defendant David Audette's Opposition To Plaintiffs' Motion For Clarification And Application For Permanent Injunction ("Opposition") at p. 8. 





 In support of their request, the Plaintiffs rely principally on Brown v. Ryan, 16 LCR 29 (2009) (Piper, J.), which presented a similar circumstance: an easement to use a strip of land "to gain access to [a tidal creek] by foot or vehicle and to erect a pier at the marsh edge." 16 LCR at 30. [Note 1] There, in addition to finding that the construction of a float, connecting ramp and boardwalk were within the permissible scope of the easement, the court went on to consider who could lawfully use the easement. Notably, the court stated that the rights granted for the benefit of the easement holders did "not authorize, however, the benefit of the easement to be exploited by a wide array of friends and neighbors of the owner of the land benefitted by the easement, nor does the right contemplate broad, excessive use of the burdened fee." 16 LCR at 33. Accordingly, the court concluded that "it is unreasonable, and an unauthorized overburdening of the easement, for the use of the easement to extend its benefit to those other than the Ryans, as owner (and family members of the owner ), and, in reasonable numbers, their guests, including family and friends, who accompany them to and from the Creek." Id. 





 In support of his position, the Defendant relies on Barker v. Wiksten, 332 Mass. 577 (1955) for the proposition that, unless expressly limited, the grant of a right of way extends to a grantee's family member, guests, and invitees. Quoting Baxendale v. North Lambeth Liberal & Radical Club, Ltd., [1902] 2 Ch. 427, 429, the Barker court stated that "it cannot be doubted that in the ordinary case of a grant of a right of way to a house and premises which may only be used as a private dwellinghouse, the right [to use the way] would extend not only to the grantee, but to members of his family, servants, visitors, guests, and tradespeople, even though none of these persons be expressly mentioned in the grant." 332 Mass. at 579. Defendant also relies on Randall v. Grant, 210 Mass. 302 (1911), in which the court allowed the use of a way by the employees of a contractor who had purchased sand from the owner of the dominant estate. There, the court stated that "[t]he language used in conveying the right of way is of the most general character, without limitation or restriction. It is broad enough to include any reasonable use to which the dominant estate may be devoted, due consideration being given to the obvious purposes which the parties had in view in establishing the way." 210 Mass. at 304. [Note 2] 





 Brown, involving access to the waters of a tidal creek for recreational purposes, is more closely analogous to this situation than Barker, involving access to a home, and Randall, involving access to a sand pit. During the trial, at which Defendant claimed ownership of the fee in the ROW, Defendant described an unfettered use of the ROW consistent with his claimed ownership rights: 





 Audette acknowledged at trial that he has extended an "open invitation" to his family members to use the ROW, dock, and shoreline area. According to him, his family is "huge," with his "immediate family" including "at least" forty people. His girlfriend and other friends also have use of the area at his invitation. In addition, Audette allows an out-of-town friend to moor his boat at the dock's second slip throughout the summer season. 





98 Mass. App. Ct. at 293-294. Defendant's claim of ownership having been rejected by the Appeals Court, he is left with the rights granted to him as the holder of "a right of way to Webster Lake." As in Brown, it would be an unreasonable use, and constitute an overburdening of the easement granted, for Defendant to continue his prior use. This court instead adopts the restrictions on use set forth in Brown as reasonable here: the ROW can be used by Defendant, members of Defendant's household (i.e., those living with him at 17 Fairfield Street, Webster), and those guests of the Defendant or of members of his household accompanied by him or by them. 





Application 





 Based on well-established law, the Plaintiffs seek a permanent injunction to enforce their rights as declared by the Appeals Court and, with respect to the definition of "guests," this court. Defendant does not oppose the issuance of the injunctive relief sought by Plaintiffs except insofar as Plaintiffs seek a fifteen-minute limit [Note 3] on vehicle parking within the boundaries of the ROW to offload at the shore of Webster Lake. Opposition at p. 7. Defendant argues that any claim regarding future use, or abuse, of the ROW is not presently before the court, and that the time limit suggested by Plaintiffs is arbitrary where more time may be required, for example, to load a boat onto a rack or trailer. Id. It appears, though, that the Defendant's right to park within the ROW was a subject of the earlier trial of this matter and of the Appeals Court's decision, and that the Appeals Court concluded that the Defendant did not have such a right "apart from temporary parking needed for easement holders to offload people or items at the shore of the lake." 98 Mass. App. Ct. at 304. Given the history between the parties, see 98 Mass. App. Ct. at 294 n. 11, clarifying what is meant by "temporary" is prudent. For present purposes, the court will adopt the fifteen-minute limit proposed by Plaintiffs (among other things, there is no evidence that the ROW has been used historically as a boat launch or that such use would fall within the scope of the use defined by the Appeals Court), with the proviso that the Defendant may exceed that limit by 30 additional minutes twice annually to install and remove his dock. If that proves unworkable, Defendant may return to this court to request that the injunction be modified. 





CONCLUSION 





 A permanent injunction will issue in conformity herewith. 





SO ORDERED. 





FOOTNOTES
[Note 1] The easement here is less specific, granting simply a "right of way to Webster Lake." See Quitclaim Deed from Marija Pastulovic to David M. Audette dated August 3, 2006 and recorded in the Registry at Book 39587, Page 154 ("2006 Deed"). The court takes judicial notice of this document. Mass. G. Evid. § 201. 

[Note 2] Defendant also argues that the ROW provides access to a Great Pond, Webster Lake; that the Colonial Ordinance of 1641 permits members of the public to "pass and repass on foot through any man's [property]," West Roxbury v. Stoddard, 89 Mass. 158 , 166 (1863), so long as passage does not involve trespass to annual crops, id., Opposition at p. 6; and so, presumably, all members of the public, including the Defendant's family and friends, have rights over the ROW with or without the Defendant. Whatever may be the merits of that argument (and the court expresses no views on them, no member of the general public claiming that right in this proceeding), the issue before this court is the interpretation of the easement rights granted by the 2006 Deed. 

[Note 3] While the Application requests a ten-minute limit on vehicle parking, Plaintiffs clarified in their reply brief and at hearing that they seek a 15-minute limit. See Reply Brief In Support Of Plaintiff's Application For Permanent Injunction And Motion For Clarification at p. 2. 


 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.